## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| AARON CARSON, et al., ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:14-CV-117-PRC |
| ) | |
| LAKE COUNTY, INDIANA, ) | |
|     Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Quash Notice of Deposition [DE 33], filed by Defendant Lake County, Indiana, on February 10, 2016. Plaintiffs Aaron Carson, Charles Collins, John Curtis, Mary Dobrijevich, Donnie Jones, Catherine Koby, Gwen Lane, Matthew Lubarski, Janet Nickovich, Charles J. Podgorny, Pattie G. Podgorny, John D. Pruzin, Danny Sebben, Helen G. Sutton, Dennis Tobin, Camila A. Trevino, Marian Vukas, Susan Wyatt, and John J. McBride, Sr. filed a response on February 29, 2016, and Defendant filed a reply on March 11, 2016. Plaintiffs seek the deposition of Defendant's Attorney, John Dull. Defendant has asserted the attorney-client privilege, and Plaintiffs argue that Defendant impliedly waived the privilege.

### PROCEDURAL BACKGROUND

On May 9, 2014, Plaintiffs filed this lawsuit against Defendant Lake County, Indiana, alleging that they were each an active employee of Defendant and that, at the time of their termination, each was performing his or her job satisfactorily. They allege that, pursuant to a written policy established by Defendant, they were terminated from their employment because each was over the age of sixty-five. Plaintiffs bring claims under the Age Discrimination in Employment Act (ADEA) and the Fourteenth Amendment Equal Protection Clause under 42 U.S.C. § 1983, alleging that Defendant terminated their employment willfully and in reckless disregard of their federal statutory and constitutional rights.

In its Answer, Defendant denies the material allegations of the Complaint and asserts numerous affirmative defenses, including acting in good faith (affirmative defense 19, 26, 28, 31), exercising reasonable care (affirmative defense 21, 31), and acting in good faith with the understanding that it acted lawfully and in compliance with all applicable law (affirmative defense 31).

**FACTUAL BACKGROUND**

Plaintiffs were retirees of Defendant who had been rehired as either part-time employees or independent contractors and were not eligible for full-time benefits. However, they received Defendant's Medicare supplemental policy for retirees through Aetna. With the enactment of the Patient Protection and Affordable Care Act (PPACA), Aetna advised that the policy would no longer be considered a "retiree-only" plan because of the rehired retirees, and Aetna wanted those rehired retirees removed from the Policy. Prior to terminating Plaintiffs' employment, Defendant retained Lawrence Grudzien, an attorney with expertise in the area of employee benefits and insurance, in a limited capacity to provide guidance on the issue of whether retirees who are rehired in a part-time capacity could maintain their enrollment in Defendant's "retiree-only" Medicare supplement insurance plan in light of the changing requirements of Medicare and the enactment of the PPACA.

On August 21, 2013, Lake County Human Resources Consultant Thomas Dabertin sent a letter to each of the Plaintiffs, informing each that his or her employment would terminate on September 30, 2013, "to be in compliance with the new federal law." (Pl. Resp., Ex. 4). The letter included the following statement:

> Specifically, an individual that meets all of the following provisions may not be employed and receive health insurance benefits:
>
> - The individual has retired from, and then was rehired part-time by Lake County;
> - The employee is over 65;
> - The employee receives Medicare as his/her primary medical coverage;

- The individual is currently insured through supplementary coverage (Aetna) provided by the Lake County Government Insurance Plan.

*Id*.

Around the same time, a PowerPoint presentation was given by Dabertin titled "The Health Care Reform Act and the Medicare Secondary Rules: How do these affect a retired and then rehired part-time Lake County employee?". The PowerPoint presentation defined affected employees as those who meet all of the following criteria:

1. Has retired from and then was rehired part-time by Lake County;
2. Is over 65;
3. Has Medicare as Primary Medical Coverage;
4. Is eligible for or currently has Aetna as the Lake County Government Retiree Health Care Plan.

(Pl. Resp., Ex. 5, p. 3). The document further explains: "Under the new requirements of the Health Care Reform Act and Medicare Secondary Rules individuals who are retired and rehired by their former employer (paid either by W-2 OR 1099) ARE NOT eligible for the Retiree Supplemental Medical Plan." *Id*. at 5. The document provides that an affected employee becomes ineligible for the Aetna Retiree Supplemental Coverage the day the employee is rehired part-time by Defendant and that affected employees must be removed before October 1, 2013. *Id*. at 6, 7. The document explains that, going forward, Defendant must create a procedure to insure that future retirees on Medicare are not rehired part-time and that "[a]n affected employee at 65 will need to be released from Lake County employment." *Id*. at 12.

On September 7, 2013, Attorney Grudzien gave Defendant a written opinion with the subject line: "Rehiring Retirees - Legal Consequences." *See* (Pl. Resp., Ex. 6, p.1). After giving an extensive analysis of the applicable law and rules, Attorney Grudzien opined:

> Hiring these retirees will have a major impact. These individuals will be treated as current employees and the exemption for the retiree plan is lost. If you provide these rehired employees with heath coverage, it must be primary to Medicare.

3

> Because of the requirement under PPACA and the Medicare Secondary Rules, I advise you not to rehire any retirees. If you decide to retire[sic] them, retiree[sic] them as full time and offer them current employee coverage.

(Pl. Resp., Ex. 6, pp. 5-6).

In this litigation, Defendant identified Attorney Grudzien as an expert and provided his September 7, 2013 letter in discovery. At his November 3, 2015 deposition, Attorney Grudzien testified that he only provided an opinion on the impact of the PPACA, he did not address the ADEA, and his professional focus is benefit plans and not employment discrimination. He testified that he advised Defendant not to rehire any retirees but that he was not asked to provide any guidance to Defendant on what to do with Plaintiffs, who were part-time employees at the time. Attorney Grudzien testified that he did not see the August 21, 2013 termination letter from Dabertin at the time it was written.

Defendant's interrogatory answers identified four individuals who participated in the termination of Plaintiffs' employment: Dabertin and Lake County Commissioners Roosevelt Allen, Michael Repay, and Gary Scheub. In response to Interrogatory No. 4, Defendant indicated that the decision to terminate Plaintiffs' employment was based upon budgetary and fiscal concerns contained in recommendations that were made by Dabertin and Lake County Attorney John Dull after consultation with Defendant's insurance plan administrator, the Lake Council and its staff, legal counsel with specific expertise in the PPACA, and experts further identified in Defendant's interrogatory answers.

Plaintiffs identify three documents relevant to the instant motion: (1) the August 21, 2013 letter from Dabertin, (2) the PowerPoint presentation, and (3) Attorney Grudzien's September 7, 2013 opinion letter.

Dabertin, Defendant's Rule 30(b)(6) witness, testified at his deposition that he did not make the decision to terminate Plaintiffs' employment. He was unable to identify who developed the four

bullet points contained in his August 21, 2013 letter but testified that they came from the PowerPoint presentation. (Pl. Resp., Ex. 7, p. 14, ll. 10-15). Dabertin testified that the August 21, 2013 letter he authored was based on Attorney Grudzien's opinions, even though Defendant had not yet received Grudzien's September 7, 2013 opinion letter. When asked if the four bullet points in the letter complied with federal law, Dabertin testified that Defendant had reached out to a number of experts in the field, including Attorney Grudzien. Dabertin did not know who authored the content of the PowerPoint but testified that it was facilitated by Commissioner Repay and that he believed that the staff of Attorney Dull assisted in its creation. (Attorney Grudzien testified that he was not involved in preparing the PowerPoint.) Dabertin testified that the letter from Attorney Grudzien recommended that Defendant not rehire any retirees. Dabertin testified that Attorney Grudzien's opinion did not address age discrimination and that Defendant viewed the issue as one of eligibility for benefits. At Dabertin's deposition, Defendant asserted an objection regarding inquiry into any legal opinions received from County Attorney John Dull.

Commissioner Repay testified at his deposition that, although he reviewed Attorney Grudzien's opinion letter, he did not meet with or discuss the opinion with Grudzien or anyone else. He did not know if Attorney Grudzien had any involvement with the PowerPoint presentation or with Dabertin's letter. Although Repay authorized Dabertin's August 21, 2013 letter, he denied any involvement in the preparation of the bullet points in the letter, and he denied involvement in preparing the PowerPoint presentation. Repay believed that Attorney Dull, through one of his assistants, prepared the PowerPoint presentation. In comparing the PowerPoint presentation materials, which stated that Plaintiffs had to be released from employment, with Attorney Grudzien's opinion letter, which did not provide an opinion about Plaintiffs' then-current employment, Repay recognized that Grudzien's letter did not address the then-current employees.

5

Repay testified that it was his understanding that the question of whether Defendant had examined all of its obligations with respect to equal employment opportunity and specifically age discrimination had been fully examined, that Defendant's actions were not affecting age discrimination rights, and that he got that understanding from Attorney John Dull. Repay did not believe anyone else had been consulted regarding age discrimination.

On January 29, 2016, Plaintiffs issued a notice of deposition and subpoena for the deposition of Attorney John Dull. In response, Defendant filed the instant Motion to Quash.

## ANALYSIS

Defendant seeks to quash the deposition subpoena of its attorney, John Dull, on the basis that Attorney Dull would be required to disclose information protected by the attorney-client privilege. Federal Rule of Civil Procedure 45(d)(3) provides that a district court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).[1] Federal common law governs the existence and applicability of an evidentiary privilege in this federal question case. Fed. R. Evid. 501. The attorney-client privilege protects "communications made in confidence by a client . . . to an attorney . . . for the purpose of obtaining legal advice." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The privilege is "'one of the oldest recognized privileges for confidential communications'" known to the common law. *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003) (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998)). However, because "'the privilege has the effect of withholding relevant information,'" courts construe the privilege to apply only where necessary to achieve its purpose. *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976); citing *In re Grand Jury Proceeding (Cherney)*, 898 F.2d 565, 567 (7th Cir. 1990)). The party seeking to invoke the privilege has the burden of establishing all of its

---

[1] In the opening brief, Defendant cites the former version of Federal Rule of Civil Procedure 45, which was amended and reorganized in 2013. *See* Fed. R. Civ. P. 45 (2013 advisory committee notes).

elements. *Id.* (citing *In re Grand Jury Proceedings (Thullen)*, 220 F.3d 568, 571 (7th Cir. 2000); *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)).

The attorney-client privilege can be waived. *United States v. Nobles*, 422 U.S. 225, 239 (1976); *United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 1987). Waiver of the attorney-client privilege can be either explicit or implied. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). Express waiver occurs when "information that would otherwise be privileged is not kept confidential." *Patrick v. City of Chicago*, — F. Supp. 3d —, —, 2015 WL 6522863, at *4 (N.D. Ill. Oct. 28, 2015) (citing *United States v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987)). An implied waiver occurs "where the client has placed in issue a communication which goes to the heart of the claim in controversy." *Union Cnty. v. Piper Jaffray & Co., Inc.*, 248 F.R.D. 217, 220 (S.D. Iowa 2008). The Eighth Circuit Court of Appeals has articulated a two-part test for implied waiver: (1) implied intention and (2) fairness and consistency. *Id.* (citing *Sedco Intern., S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)).

Courts have found implied waiver (1) when a client testifies concerning portions of the attorney-client communications; (2) when a client places the attorney-client relationship directly at issue; and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense. *See Garcia v. Completely Kids*, 8:14-CV-119, 2016 WL 199413, at *3 (D. Neb. Jan. 15, 2016) (citing *Sedco*, 683 F.2d at 1206 (citing cases)); *see also Jackson v. City of Chicago*, No. 03 C 8289, 2006 WL 2224052, at *7 (N.D. Ill. July 31, 2006) (noting that implied waiver occurs when "the client's claim or defense puts the attorney's advice at issue"); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.").

As cited by Defendant, "at issue" waiver "occurs when a party injects certain claims or defenses into the case which implicate, i.e., put 'at issue' the communications of counsel." *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 275 (D. Mass. 2015). This is a fact intensive inquiry. *Id*. (citing *United States v. Desir*, 273 F.3d 39, 45 (1st Cir. 2001)). However, "['at-issue'] waiver does not occur simply because privileged information is relevant or because a certain claim is alleged." *United States v. Capital Tax Corp.*, No. 04 CV 4138, 2011 WL 589615, at *5 (N.D. Ill. Feb. 10, 2011) (citing *Chamberlain Group v. Interlogix, Inc.*, No. 01 CV 6157, 2002 WL 467153, at *3 (N.D. Ill. Mar. 27, 2002)); *see also Bacchi*, 110 F. Supp. 3d at 275 (citing *Banco de Brasil, S.A. v. 275 Washington Street Corp.*, No. 09-11343, 2011 WL 3208027, at *3 (D. Mass. July 27, 2011)). "Rather, to waive the privilege, the party to whom the privilege belongs must affirmatively put at issue the specific communication, document, or information to which the privilege attaches." *Capital Tax Corp.*, 2011 WL 589615, at *5 (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 275 (N.D. Ill. 2004)).

Similarly, when a client asserts reliance on an attorney's advice as an element of a claim or defense, "[t]he key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." *In re Cty. of Erie*, 546 F.3d 222, 228, 229 (2d Cir. 2008); *see also Seneca Ins. Co., Inc. v. Western Claims, Inc.*, 774 F.3d 1272, 1277-78 (10th Cir. 2014) ("[A]llowing [plaintiff] to rely on 'advice of counsel' to establish the reasonableness of [the settlement] while excluding the contents of that advice would violate the well-established principle that 'attorney-client communications cannot be used both as a sword and a shield.'" (internal citations omitted)); *Bacchi*, 110 F. Supp. 3d at 276 (citing *In re Cnty. of Erie*, 546 F.3d at 228; *Banco de Brasil*, 2011 WL 3208027, at *3).

For purposes of proving reliance, it is not whether the defendant has stated an intent to introduce or use evidence of attorney communication at trial that is controlling but rather that the defendant's defense relies on certain facts that can only be tested or rebutted if the adversary is given access to the privileged material. *Bacchi*, 110 F. Supp. 3d at 276 (citing *Erie*, 546 F.3d at 229).

> For example, if the defendant were to raise the defense that it acted based on its own subjective good faith belief that its actions were lawful, then the reliance element would likely be met, and *that is so even if the defendant were to state that it did not intend to introduce any evidence regarding its attorneys' advice*. That is because the plaintiff, in order to test the assertion of good faith, would need to know whether the defendant received any legal advice suggesting that its actions were in fact not lawful.

*Id*. (emphasis added) (internal citations omitted); *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 611 (2014) (noting that forfeiture of the attorney-client privilege may occur when a defendant asserts a good faith belief in the lawfulness of its actions, even if the defendant does not expressly invoke counsel's advice (quoting *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012))). In *United States v. Bilzerian*, the Second Circuit Court of Appeals similarly held that when a party pleads that it "thought [its] actions were legal," it puts its own "knowledge of the law and the basis for [its] understanding of what the law required in issue," including "conversations with counsel." 926 F.2d 1285, 1292 (2d Cir. 1991), quoted in *Scott*, 67 F. Supp. 3d at 610. "Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *Bilzerian*, 926 F.2d at 1292.

Waiver may occur even when a defendant claims to have ignored the advice of counsel. *Id.* (citing *Arista Records LLC v. Lime Grp., LLC*, 06 Civ. 5936, 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011)). Waiver in these circumstances arises out of fairness "[b]ecause legal advice that a party received may well demonstrate the falsity of its claim of good faith belief." *Id*. (quoting *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 09 Civ. 8083, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010)).

"In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Patrick*, — F. Supp. 3d at —, 2015 WL 6522863, at *4. As to fairness and consistency, waiver is found "when the conduct places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege." *Sedco*, 683 F.2d at 1206 (citation omitted); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916, 918-19 (N.D. Ill. 1989).

In this case, the parties do not dispute that the communications between Attorney Dull and Defendant are protected by the attorney-client privilege but instead dispute whether Defendant impliedly waived the privilege by asserting the affirmative defenses of acting in good faith, exercising reasonable care, and acting in good faith with the understanding that it acted lawfully and in compliance with *all* applicable law. The Court finds that Defendant has impliedly waived its attorney-client privilege as to communications with Attorney Dull related to Plaintiffs' termination both through Repay's testimony concerning portions of the attorney-client communication and by asserting reliance on the advice to support its affirmative defenses.

Plaintiffs' Complaint is brought pursuant to the ADEA and the Fourteenth Amendment based on the termination of their employment. Dabertin testified that he did not make the decision to terminate Plaintiffs' employment, but it appears that Commissioner Repay was involved in that decision because he testified that he authorized the letter. In his Rule 30(b)(6) testimony, Repay implicated Attorney Dull in the decision to terminate Plaintiffs. Contrary to Defendant's assertion that "[Defendant] did not actually rely on the opinions and/or advice of Mr. Dull in making the final decision regarding the Plaintiffs," (Def. Br. 4), Repay testified that Attorney Dull gave legal advice regarding whether the action of terminating Plaintiffs' employment would be in violation of age discrimination laws, which was considered when making the decision to terminate Plaintiff's

employment. It also appears, based on Repay's testimony, that Attorney Dull and/or his office was involved with preparing the PowerPoint presentation and Plaintiffs' termination letters. (No one who has been disclosed by Defendant has been able to explain where the information was gathered for the four bullet points in the letters and the PowerPoint presentation.)

Moreover, Repay testified that it was his understanding that the question of whether Defendant had examined all of its obligations with respect to equal employment opportunity and specifically age discrimination had been fully examined, that Defendant's actions in terminating Plaintiffs' employment were not affecting age discrimination rights, and that he got that understanding from Attorney Dull. Repay did not believe anyone else had been consulted regarding age discrimination. Based on Defendant's interrogatory answers, Attorney Dull also gave advice interpreting Attorney Grudzien's opinion on compliance with benefits law.

Thus, Repay's testimony that he believed Defendants' actions were legal constitutes testimony about the attorney-client communications and put Defendants' knowledge of the law and the basis for its understanding of what the law required in issue on the affirmative defenses. *See Bilzerian*, 926 F.2d at 1292. Defendant has opened the door to these communications through Repay's testimony that to his knowledge, Attorney Dull alone confirmed compliance with age discrimination law. Contrary to Defendant's assertion, this is not an instance in which a defendant merely pleads a good faith defense nor was Attorney Dull simply a messenger delivering Attorney Grudzien's opinion to Defendant; the evidence of record indicates that Dull participated in the decision making process and that Defendant relied on Attorney Dull's legal advice in making the decision to terminate Plaintiffs' employment. Defendant does not address, much less refute that evidence.

An explicit intent by Defendant to rely on Attorney Dull's advice is not required to find waiver because Plaintiffs are entitled to know what legal advice Defendant received from Dull in

order to test Defendant's assertions of good faith. *See Bacchi*, 110 F. Supp. 3d at 276. Whether Defendant acted in good faith and believed that its actions were "in compliance with *all* applicable law" can only be assessed by examining Attorney Dull's communications with Defendant regarding compliance with age discrimination laws and his interpretation of Attorney Grudzien's opinion. In fairness, Plaintiff must be permitted to explore these communications.

In its motion, Defendant focuses on its reliance on the advice of Attorney Grudzien regarding compliance with the PPACA, arguing that Attorney Dull did not provide his own advice but instead sought the expertise of Attorney Grudzien. Defendant asserts that, by disclosing Grudzien, it has provided Plaintiffs with the records and information regarding any legal opinion that the Lake County Commissioners may have taken into account regarding Plaintiffs' benefits and their employment. Defendant reasons that Attorney Grudzien indicated to Lake County Government that rehired retirees would be identified as "current employees' under the revised Medicare regulations, and, therefore, could have no place in the "retiree-only" insurance plan. Per Grudzien, the presence of these individuals within the plan would cause the plan to lose its exemptions and force numerous changes to the plan. Thus, Defendant's decision under these circumstances was to terminate Plaintiffs' employment, and correspondence was sent to each Plaintiff outlining the reasons for the decision. Defendant argues that, whether or not Attorney Dull had anything to do with the correspondence is irrelevant and immaterial and no further information is needed by Defendant to establish its affirmative defenses regarding good faith that would warrant the deposition of Attorney Dull.

First, Grudzien denied in his deposition testimony that he gave any opinion on what to do with Plaintiffs—the rehired retirees who were working for Defendant. Grudzien testified that he did not recommend to Defendant that Plaintiffs should be terminated. Similarly, Repay testified that he could not find support in Grudzien's opinion for the reasons given for terminating Plaintiffs in the

four bullet points of the termination letter and the PowerPoint presentation. Thus, someone interpreted Grudzien's opinion in deciding to terminate Plaintiffs.

Second, as discussed above, Repay testified that Attorney Dull was involved with the decision to terminate Plaintiffs. Defendant's assertion to the contrary is unsupported by evidence. In its reply brief, Defendant asserts that Repay and Dabertin testified that "the decisions were made based upon Atty. Grudzien's advice." (Def. Reply 5). However, Defendant does not cite to Dabertin's testimony, and the cited portion of Repay's deposition does not support this contention.[2] The Court recognizes that both Repay and Dabertin's depositions overall indicate that Grudzien's opinion played a role in the decision to terminate Plaintiff's employment, but neither indicates that Defendant relied *solely* on Grudzien's opinion.

In this case, both benefits laws, such as the PPACA, and employment discrimination laws, such as the ADEA, are at play. Defendant is arguing that, because it complied with the PPACA, it acted in good faith, and, thus, did not violate employment discrimination laws. However, it appears that Attorney Dull provided advice on both the interpretation of Attorney Grudzien's opinion on benefits law as well as the question of whether Defendant was in compliance with age discrimination law.

Defendant argues that this case is analogous to *Garcia v. Completely Kids*, in which the executive director consulted with counsel prior to the plaintiff's termination "to make sure that we have followed the appropriate steps in regard to termination." 8:14-CV-119, 2016 WL 199413, at *3 (D. Neb. Jan. 15, 2016). As long-standing counsel for the defendant, the attorney was familiar with the company's policies and severance packages. *Id*. The court found significant that the director

---

[2] Defendant cites only Page 10, lines 8-21, of Repay's deposition. (Def. Reply 5). There is no mention of Grudzien on page 10 of the deposition. However, it appears that Defendant may have intended to cite page 33 of the deposition, which is on page 10 of the exhibit. (There are four deposition pages to an exhibit page). Lines 8-21 of page 33 discuss Grudzien's opinion; however, in response to each question, Repay responded, "I don't know." (Pl. Resp., Ex. 7, p. 33, ll. 8-21).

13

did not testify that she had relied on counsel in deciding whether to terminate the plaintiff. *Id*. The court found that nothing in the record showed that the defendant relied on counsel in deciding whether to terminate, discriminate, or retaliate against the plaintiff; rather, the reliance on counsel was solely for ensuring compliance with internal procedures. *Id*. The court found no waiver because the reliance was not regarding any element of a claim or defense and because, under the facts presented and as to the claims in that case, "Defendant is not relying on the advice of counsel such that it would be unfair and inconsistent to permit Defendant to retain the privilege." *Id*. The facts of *Garcia* are distinguishable from the instant case because there is no evidence here that Defendant relied on Attorney Dull to ensure compliance with internal procedures, despite Defendant's unsupported assertion in its brief. *See Garcia*, 2016 WL 199413, at *3. Rather, Repay testified that Attorney Dull was involved with the decision to terminate Plaintiffs' employment and that Attorney Dull, and no one else to Repay's knowledge, advised Defendant on compliance with age discrimination laws.

Plaintiffs cite *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607 (S.D.N.Y. 2014), as persuasive. In *Scott*, the plaintiffs alleged violations of the Fair Labor Standards Act, arguing in part, that they had been improperly classified as executives, which exempted them from overtime pay. *Id*. at 609. The court found that the defendant had received legal advice on the decision to classify the employees as executives and that knowing whether counsel had advised not to classify them as exempt was necessary to evaluate the validity of defendant's statutory affirmative defenses. *Id*. at 614. Like in *Scott*, Plaintiffs in this case have shown that Defendant in fact had the advice of counsel, Attorney Dull, regarding whether its actions complied with age discrimination laws. 2014 WL 7236097, at *6. And, like in *Scott*, knowing what advice was given regarding age discrimination is necessary to evaluate the validity of Defendant's affirmative defenses.

The instant case is also similar to *McLaughlin*, 714 F. Supp. 916, which is cited for illustrative purposes in *Bacchi*, 110 F. Supp. 3d at 276-77. In *McLaughlin*, the defendant produced in response to a summary judgment motion the affidavit of an attorney summarizing guidance the defendant had received from the Department of Labor regarding a labor dispute. 714 F. Supp. at 917-18. The defendant moved to quash the subpoena plaintiff served on defendant's attorney based on the attorney-client privilege, arguing that the attorney's legal advice was not at issue because the company's defense relied on the guidance from the Department of Labor, not its attorney. *Id* at 918. In the instant case, Defendant makes a similar argument: Attorney Dull's legal advice is not at issue because Defendant relied on the opinion of Attorney Grudzien in deciding whether to terminate Plaintiffs' employment, not the opinion of Attorney Dull.

However, the court in *McLaughlin* found that defendant's submission of the attorney's affidavit implied that the defendant's "interpretation of DOL actions [was] reflected in their counsel's interpretation and understanding of DOL actions." 714 F. Supp. at 919-20. Although Attorney Dull did not provide an Affidavit in these proceedings summarizing Attorney Grudzien's opinion, Repay and Dabertin's testimony assert that Defendant's good faith belief that it was in compliance with the law—not only benefits law but also age discrimination law—was based on Attorney Dull's opinion. Repay testified that Attorney Dull gave him the understanding that the question of whether Defendant had examined all of its obligations with respect to equal employment opportunity and specifically age discrimination had been fully examined and that Defendant's actions were not affecting age discrimination rights. And, like the attorney in *McLaughlin*, Attorney Dull appears to also have given his opinion interpreting and understanding Attorney Grudzien's opinion—namely that, based on Attorney Grudzien's opinion, Plaintiffs' employment should be terminated.

Finally, the instant case is distinguishable from *Bacchi*, cited but not discussed by Defendant. In *Bacchi*, the court found no waiver because the defendant made its decision not to distribute surplus funds to shareholders based strictly on guidance that it received from the Massachusetts Division of Insurance and because reference to the advice of counsel was not necessary to assess whether the defendant had in good faith followed the Division's guidance. 110 F. Supp. 3d at 277-78. A comparison of the guidance with the defendant's actions was sufficient. *Id*. at 278. In this case, if a comparison of Attorney Grudzien's opinion with Defendant's actions were sufficient to establish the good faith defenses, then no further inquiry would be required. However, Attorney Grudzien did not opine that Plaintiffs' employment should be terminated. There is evidence that Defendant was given legal advice by Attorney Dull regarding compliance with age discrimination law and perhaps interpreting Attorney Grudzien's advice.

A court finding waiver can tailor the scope of the waiver to the needs of the opposing party in litigating the claim in question. *See Bittaker*, 331 F.3d at 720. The Court finds that Defendant has waived its attorney-client privilege with respect to communications with Attorney John Dull only to the extent that Attorney Dull gave legal advice regarding Plaintiffs' termination, including, but not limited to, advice regarding compliance with age discrimination law and compliance with benefits law, including interpretation of Attorney Grudzien's opinion.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion to Quash Notice of Deposition [DE 33] and **ORDERS** that Plaintiffs may take the deposition of Attorney John Dull limited to the extent set forth in this Opinion and Order.

SO ORDERED this 19th day of April, 2016.

                                        s/ Paul R. Cherry
                                        MAGISTRATE JUDGE PAUL R. CHERRY
                                        UNITED STATES MAGISTRATE JUDGE