# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

AARON CARSON, CHARLES COLLINS,  )
JOHN CURTIS, MARY DOBRIJEVICH,  )
DONNIE JONES, CATHERINE KOBY,  )
GWEN LANE, MATTHEW LUBARSKI,  )
JOHN J. MCBRIDE, SR., JANET NICKOVICH, )
RONALD PAULSIN, CHARLES J. PODGORNY, )
PATTIE G. PODGORNY, JOHN D. PRUZIN, )
DANNY SEBBEN, HELEN G. SUTTON,  )
DENNIS TOBIN, CAMILA A. TREVINO,  )
MARIAN VUKAS, and SUSAN WYATT,  )
  Plaintiffs,          )
              )
  v.             )  CAUSE NO.: 2:14-CV-117-PRC
              )
LAKE COUNTY, INDIANA,     )
  Defendant.        )

## OPINION AND ORDER

This matter is before the Court on (1) Defendant's Motion for Summary Judgment [DE 40], filed by Defendant Lake County, Indiana, ("Lake County") on June 13, 2016; (2) Plaintiffs' Motion for Partial Summary Judgment [DE 42], filed by all Plaintiffs on June 13, 2016; (3) Defendant's Motion to Submit Omitted Exhibit [DE 45], filed by Lake County on July 14, 2016; (4) Plaintiffs' Motion to Strike [DE 49]; and Defendant's Request for Oral Argument [DE 53], filed by Lake County on August 8, 2016. For the reasons set forth below, the Court grants summary judgment in favor of Defendant Lake County, Indiana on all of Plaintiffs' claims.

## PROCEDURAL BACKGROUND

On April 11, 2014, a Complaint was filed by Plaintiffs Aaron Carson, Charles Collins, John Curtis, Mary Dobrijevich, Donnie Jones, Catherine Koby, Gwen Lane, Matthew Lubarski, John J. McBride, Sr., Janet Nickovich, Charles J. Podgorny, Pattie G. Podgorny, John D. Pruzin, Danny Sebben, Helen G. Sutton, Dennis Tobin, Camila A. Trevino, Marian Vukas, and Susan Wyatt.

Plaintiffs allege that they were terminated from their employment by Defendant Lake County in violation of their rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (ADEA), and in violation of their rights pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, brought under 42 U.S.C. § 1983.

Lake County filed an Answer on May 28, 2014.

On October 1, 2014, Ronald Paulsin filed a Motion to Intervene, which was granted on October 2, 2014. Paulsin's Intervenor Complaint was filed on October 2, 2014, bringing the same claims as those brought by the original Plaintiffs.

On June 13, 2016, Lake County filed a Motion for Summary Judgment on all claims, and Plaintiffs filed a Motion for Partial Summary Judgment on all claims.

On July 14, 2016, Lake County filed a Motion for Leave to File Omitted Exhibit, asking the Court to allow it to file the Declaration of Larry Blanchard, which Lake County had relied on in its Motion for Summary Judgment but had not attached to the motion. Lake County also filed its response to Plaintiffs' Motion for Partial Summary Judgment.

The same day, Plaintiffs filed their response to Lake County's Motion for Summary Judgment. Plaintiffs also filed a Motion to Strike, asking the Court to strike Lake County's reference to the Declaration of Larry Blanchard in its Memorandum in Support of its Motion for Summary Judgment because Lake County did not attach the declaration as an exhibit to its motion.

On July 15, 2016, Plaintiffs filed a response to the Motion for Leave to File Omitted Exhibit. On July 27, 2016, Lake County filed a reply in support of its Motion for Leave to File Omitted Exhibit and in opposition to Plaintiffs' Motion to Strike.

On August 1, 2016, Plaintiffs filed a reply in support of their Motion for Partial Summary Judgment. Defendants have not filed a reply in support of their Motion for Summary Judgment, and the time to do so has passed.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## MOTION TO STRIKE AND MOTION TO SUPPLEMENT

Plaintiffs' Motion to Strike and Lake County's Motion to Submit Omitted Exhibit both concern Lake County's failure to attach Exhibit 1, which is the Declaration of Larry Blanchard, to its Motion for Summary Judgment. The Declaration of Larry Blanchard is extensively cited for background information on the financial health of Lake County. However, little of the information is material to the Court's decision on the central legal issues, and the substance of the Declaration is repeated in other evidence offered by both Lake County and Plaintiffs. In addition, as recognized by Plaintiffs, the Declaration of Larry Blanchard is properly considered in response to Plaintiffs' Motion for Partial Summary Judgment, as it was timely submitted. Extensions of time for the filing of dispositive motions were granted, and the trial date is quickly approaching. Thus, because most of the information in Larry Blanchard's Declaration is immaterial, because Plaintiffs would be prejudiced by not having had the benefit of the Declaration in responding to Lake County's Motion for Summary Judgment, and because there is insufficient time for supplemental briefing prior to trial, the Court grants Plaintiffs' Motion to Strike and denies Lake County's Motion to Submit Omitted Exhibit.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure require that a motion for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56 (a), (c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Spierer*, 798 F.3d at 507-08; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(c)(1), (e); *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1986)). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-50.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

On cross motions for summary judgment, a court construes, "all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield*

*Ass'n*, 538 F3.d 615, 621 (7th Cir. 2008). The Court looks to the burden of proof each party would bear on an issue at trial. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).

## MATERIAL FACTS[1]

Defendant Lake County, Indiana's health care self-insurance fund liquidated its cash reserve by 2013 from a fund that had a balance of $11 million as of 2007.

From 2007 through 2013, Lake County offered all of its employees over the age of sixty-five an opportunity for voluntary retirement with the ability to immediately begin receiving Public Employees' Retirement Fund benefits and also maintain health insurance as secondary coverage to Medicare for a period of time. Under the 2010 Early Retirement Options, employees were presented with three options. "Option Two," relevant to this litigation, provided that an employee who is age sixty-five and who has at least five years of continuous service on or before a given date: (1) will receive five years of health insurance coverage at the same rate as regular full-time employees after which the rate would increase to the rate charged to other retirees; (2) must enroll in the Medicare program with Lake County's health insurance plan serving as secondary coverage to Medicare coverage; and (3) may return to work at Lake County on a part-time basis, not to exceed twenty-four hours per week at their pre-retirement hourly wage. If the employee's employment is terminated (whether voluntarily or through layoff/reduction in force), the employee would remain eligible for

---

[1] In their reply in support of their Motion for Partial Summary Judgment, Plaintiffs criticize Lake County for not providing a "Statement of Genuine Disputes" as required by Northern District of Indiana Local Rule 56-1(b)(2). The objection is curious as Lake County provide a statement titled "Statement of Genuine Issues of Material Fact," which is substantively a statement of genuine disputes and which identified one disputed fact. Lake County disputed Plaintiffs' statement in their motion that they were "full-time" employees at the time their employment was terminated; Plaintiffs have since acknowledged that this was a scrivenor's error and that they were part-time employees.

In contrast, Plaintiffs, in responding to Lake County's Motion for Summary Judgment, do not identify any genuine disputes or issues of fact notwithstanding the section of their brief titled "Statement of Genuine Disputes." The section is a statement of material facts, none of which conflict with the facts set forth by Lake County in its motion.

6

the reduced cost of health insurance for the five years. Also, "[t]his option does not guarantee part time employment." (Def. Br., Ex. 5, p. 2). Lake County offered health insurance coverage to retirees, including part-time employees over the age of sixty-five, through Aetna Insurance ("Aetna").

As part-time employees of Lake County, Plaintiffs were not eligible for full-time benefits but received the Medicare supplemental health insurance policy through Aetna that was paid for by Lake County. They received this benefit either as a result of their prior employment with Lake County or through a spouse who was employed by Lake County.

Sometime in 2013, Lake County learned from Aetna that, under the Patient Protection and Affordable Care Act, commonly called the Affordable Care Act, employees who had retired and been rehired part-time who were receiving the Aetna supplemental coverage either would not be able to remain employed or would have to give up the health insurance supplement. As a result, Lake County hired Larry Grudzien, an employee benefits attorney, and tasked him to look at Aetna's contention that it would no longer allow active, part-time employees to participate in the retiree-only insurance plan as a result of the Affordable Care Act. Attorney Grudzien met with the Lake County Commissioners regarding his opinion on this issue.

Thomas Dabertin (the Lake County Human Resources Consultant) and Lake County Commissioner Michael Repay presented a PowerPoint presentation to Lake County officials and department heads entitled "The Health Care Reform Act and the Medicare Secondary Rules: How do these affect a retired and then rehired part-time Lake County employee?" (Pls. Mot., Ex. 14, p. 1). The PowerPoint presentation answers the question, "What Employees Does this Affect?":

An affected employee meets ALL of the following criteria:

1.    Has retired from and then was rehired part-time by Lake County;
2.    Is over 65;

3.       Has Medicare as Primary Medical Coverage;
4.       Is eligible for or currently has Aetna as the Lake County Government Retiree Health Care Plan.

*Id*. at 3. The PowerPoint presentation further explains: "Under the new requirements of the Health Care Reform Act and the Medicare Secondary Rules individuals who are retired and rehired by their former employer (paid either by W-2 OR 1099) ARE NOT eligible for the Retiree Supplemental Medical Plan." *Id*. at 5. The document advises that an affected employee becomes ineligible for the Aetna Retiree Supplemental Coverage the day that the employee is rehired part-time by Lake County. It also asserts that affected employees "must be removed as Lake County employees before October 1, 2013." *Id*. at 7. The PowerPoint presentation advises that, going forward, the Lake County Council and Lake County Board of Commissioners need to create a procedure to insure that future Lake County retirees on Medicare are not rehired part-time and that "an affected employee at 65 will need to be released from Lake County employment." *Id*. at 12.

On August 21, 2013, Dabertin wrote a letter to all but one of the Plaintiffs, terminating the employment of each as of September 30, 2013. (Plaintiff Ron Paulsin was terminated in 2014 with an identical letter.) The letter explains that the Affordable Care Act regulates the rehiring of retired employees and the health insurance coverage that those individuals receive. He wrote:

> [A]n individual that meets all of the following provisions may not be employed and receive health insurance benefits:
>
> •     The individual has retired from, and then was rehired part-time by Lake County;
> •     The employee is over 65;
> •     The employee receives Medicare as his/her primary medical coverage;
> •     The individual is currently insured through supplementary coverage (Aetna) provided by the Lake County Government Insurance Plan.

(Def. Mot., Ex. G). The letter goes on to provide that the recipient of the letter met the four criteria and, as a result, "we must conclude your employment with Lake County no later than September 30, 2013 to be in compliance with the new federal law." *Id*.

Plaintiffs were part-time employees of Lake County, all of whom were over the age of sixty-five when their employment was terminated.[2] At the time of their termination, each Plaintiff was meeting the reasonable job performance expectations of Lake County. *See* (Pls. Mot., Ex. 36 (Lake County's Answer to Pls. Req. for Admis. No. 17)).

Lake County's Answers to Interrogatories identify four individuals who participated in the process and the decision to terminate Plaintiffs' employment: Dabertin and Lake County Commissioners Roosevelt Allen, Michael Repay, and Gerry Schueb. Lake County indicated in response to an interrogatory that the decision was based upon budgetary and fiscal concerns contained in recommendations that were made by Attorney John Dull and Dabertin after consultation with Lake County's insurance plan administrator, the Lake County Council and its staff, legal counsel with specific expertise in the Affordable Care Act, and experts further identified in Lake County's interrogatory answers. In response to Interrogatory No. 11, Lake County identified Grudzien as an expert witness on its behalf, representing that his testimony would address the impact of the Affordable Care Act on the Lake County Retiree Health Insurance Plan that "ultimately necessitated the termination of each Plaintiff." (Pls. Mot, Ex. 13, p. 6).

On September 7, 2013, Grudzien sent a letter to the Lake County Commissioners with the subject line "Rehiring Retirees–Legal Consequences." The letter provides a factual background:

---

[2] Plaintiffs state in their Statement of Genuine Disputes in their response brief that "[m]ost, but not all, were retirees of the defendant who had been rehired as part-time employees." (Pls. Resp. 2). However, it is not clear how the cited evidence supports this statement.

Your retirees are covered under the Aetna Medical Supplemental Policy ("Policy"). They have come back to work for you as either a part-time employee . . . or as an independent contractor. These employees are not eligible for full-time benefits. Aetna has advised that by rehiring these retirees, it will no longer consider a Retiree-Only plan. *Aetna wants these part-time and independent contractors removed from the Policy, so that the Policy does not lose the exemption from Health Reform and other federal mandate*.

(Def. Mot, Ex. I, p. 1) (emphasis added). Grudzien then provides the legal background of stand-alone retiree medical plans prior to the passage of the Affordable Care Act, such as the Aetna plan, and their exemption from many of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") requirements. A "retiree-only plan" is defined as any group health plan with less than two participants who are "current employees." He then explains special considerations for defining "rehired retirees." Next he lists the numerous "insurance market reforms" of the Affordable Care Act from which retiree-only plans are exempt as well as those sections with which retiree-only plans must comply. Grudzien then opines that, although HIPAA regulations do not define who is a current employee for purposes of the retiree-only exemptions, "a retiree who is rehired as an employee . . . should be treated as a current employee that counts against retiree only plan status and should be covered under the ERISA plan maintained for purposes of current (i.e. active) employees immediately upon rehire." *Id*. at p. 3.

Grudzien goes on to explain that the Medicare Secondary Payer rules govern when a group health plan must first pay and when it may pay secondary on a claim for medical care if an individual is covered under both a group health plan and Medicare. "As a general rule, the Medicare Secondary Payer statute prohibits a group health plan from 'taking into account' the Medicare entitlement of a current employee or a current employee's spouse or family member . . . ." *Id*. at 4. He explains that former employees and their family members who are participating in a group health

plan generally will not be subject to the Medicare Secondary Payer requirements (e.g. Medicare will

be the primary payer) for Medicare entitlement based on age or disability.

The special rule for rehired retirees entitled to retiree medical coverage is that "a rehired

retiree who is covered by a group health plan and who performs services sufficient to qualify for

coverage on that basis . . . is considered to be covered by virtue of current employment status . . .

." *Id*. at 5.

> Grudzien ultimately opines:
>
> Hiring these retirees will have a major impact. These individuals will be treated as current employees and the exemption for the retiree plan is lost. If you provide these rehired employees with health coverage, it must be primary to Medicare.
>
> Because of the requirement under [the Affordable Care Act] and the Medicare Secondary Rules, I advise you not to rehire any retirees. If you decide to [rehire] them, [rehire] them as full time and offer them current employee coverage.

*Id*. at 5-6.

On September 12, 2013, Lake County sent each Plaintiff a letter with a copy of Grudzien's

opinion attached. The letter provides:

> Recently, you received correspondence regarding your employment status with Lake County Government and the impact of changes in federal law in regard to the health insurance you receive. Due to those changes, your part-time employment is being ended as of October 1, 2013. That decision was made only after detailed research was performed and an attorney who is an expert in the field of insurance law was consulted.

(Def. Mot., Ex. 11).

David Baker, the third-party administrator for Lake County's self- insurance program,

explained that, if rehired retirees receive the Aetna supplemental insurance, the Aetna plan would

no longer be considered a Medicare supplement, which would require compliance with several laws

and would result in increased rates. At his deposition, Grudzien testified that, to allow part-time

employees to remain in the plan would have, "blow[n] [the plan] apart." (Def. Mot., Grudzien Dep., 41:19-21). Dabertin testified that the letter explained that hiring the retirees would have a "major impact" because the retirees would be treated as current employees resulting in the loss of the exemption for the retiree-only plan. (Def Mot., Dabertin Dep., 23:16-19).

Regarding the scope of his opinion, Grudzien testified that he only provided an opinion to Lake County concerning the impact of the Affordable Care Act and that he did not address the Age Discrimination in Employment Act. He testified that, as an attorney, he concentrated on benefit plans and did not work in the area of employment discrimination. Grudzien denied any involvement in the preparation of the PowerPoint presentation. He testified that he advised Lake County not to rehire any retirees and that he was not asked to provide any guidance on what to do with Plaintiffs who, at the time, were current part-time employees. He also testified that he did not see the August 21, 2013 termination letter when it was written. He did not know that his opinion letter was attached to Dabertin's September 12, 2013 letter. He did not recommend that anyone's employment be terminated. Grudzien testified that he did not opine on the issue of what to do with the Plaintiffs and other similarly situated employees who were already working for Lake County and met the four conditions of being a part-time employee who was sixty-five or older, had Medicare as his or her primary insurance, and was participating in the Aetna supplemental insurance plan.

On October 13, 2013, Lake County submitted a form pursuant to the Affordable Care Act certifying that, as of September 30, 2013, the Aetna insurance plan was truly a "retiree-only" plan in compliance with the changed regulations prior to the Affordable Care Act's effective date of October 1, 2013.

Dabertin explained that the purpose of the retire/rehire part-time program was to reduce Lake County's exposure for its self-insured health insurance plan, which was the second largest expense to Lake County. Dabertin testified that at the time of the termination of Plaintiffs as of September 30, 2013, non retiree part-time employees did not receive health insurance benefits. If Lake County rehired the retirees as full-time employees and returned them to primary coverage, it would be extremely expensive for Lake County. Put differently, Dabertin testified that rehired retirees could be treated as current employees but then "we would have surely exhausted or further exacerbated the financial situation of the [self-insurance fund]." (Pls. Mot., Ex. 3, p. 44:9-45:2). Dabertin explained that the self-insurance fund was over budget and was continuing to lose money.

Dabertin testified that the Lake County elected officials made the decision to terminate Plaintiffs' employment; he did not make that decision. Nor did he draft the four bullet points in the letter that he sent to each employee. He testified that the bullet points came from the PowerPoint presentation made to the Board and that the presentation was facilitated by Commissioner Mike Repay. Dabertin testified that he believed that the staff of the County Commissioner's attorney assisted in putting together the bullet points or the PowerPoint presentation.

Dabertin testified that his understanding was that all four bullet points had to be met in order for Lake County to be required to terminate the employee's employment. He explained that the provisions of the Affordable Care Act that were going into effect in 2013 prevented Plaintiffs from working part-time for Lake County and having Medicare as their primary health insurance coverage. Dabertin testified that Plaintiffs' termination was not a reduction in force.

Dabertin acknowledged that Grudzien's opinion letter provided a recommendation that Lake County not rehire any retirees. When asked whether Lake County relied upon Grudzien's opinion

13

letter when drafting the August 21, 2013 termination letters, Dabertin testified that Grudzien's September 7, 2013 opinion letter was a summary of what Grudzien had already told Lake County Commissioners. Dabertin testified that Grudzien's letter did not address the issue of age discrimination because Lake County had viewed the issue as one of eligibility for benefits. Dabertin acknowledged that the policy only affected individuals who were active part-time employees who received the Aetna insurance supplement and who were age sixty-five or older and that the policy did not affect any active part-time employee who had retired and was rehired part-time at ages sixty-one, sixty-two, sixty-three, sixty-four.

Dabertin testified that approximately ten percent of Lake County's workforce is currently age sixty-five or older, which is approximately 175 employees.

The Lake County Commissioners, who function as the executive branch of the Lake County government, have final authority over personnel decisions that fall within the Board's jurisdiction. Commissioner Repay testified that, although he reviewed Grudzien's opinion letter, he did not meet or discuss the opinion with Grudzien or anyone else. Repay did not know if Grudzien had any involvement with the PowerPoint presentation or with Dabertin's letter. Repay authorized Dabertin's August 21, 2013 letter, but denied any involvement in the preparation of the bullet points contained in the letter or in the preparation of the PowerPoint presentation. Repay testified that he believed County Attorney John Dull prepared the written materials for the PowerPoint presentation and he assumed that Dull took steps to ensure that the decision to terminate Plaintiffs complied with the law.

Attorney Dull testified that he did not provide the Lake County Commissioners with any legal advice as to the decision to terminate Plaintiffs. He testified that he was not involved in the

preparation of the August 21, 2013 letter written by Dabertin and that he was not involved in the preparation of the PowerPoint presentation materials. Finally, he testified that he did not review Lake County's decision to terminate Plaintiffs' employment to determine whether the decision would comply with equal employment opportunity laws.

Larry Blanchard, who works as a financial advisor for the Lake County Commissioners, testified as to his understanding of the situation:

> My understanding is that there was eligibility criteria that didn't apply to these individuals, the Aetna plan, and that is when they hired an attorney that was specialized in ObamaCare in these types of–not the finances, but the eligibility question, eligibility criteria. I was not really involved that much in that.

(Pls. Mot., Ex. 7, p. 25:24 -26:8).

## ANALYSIS

Defendant Lake County moves for summary judgment in its favor on Plaintiffs' ADEA claim, arguing that age was not the "but for" cause of Plaintiffs' termination, as well as on Plaintiffs' § 1983 equal protection claim, asserting that there was a rational basis for the decision to terminate their employment. In their Motion for Partial Summary Judgment, Plaintiffs ask the Court to enter summary judgment in their favor on the issue of liability, arguing that the decision to terminate their employment was facially discriminatory. The Court considers each legal claim in turn.

### A. Age Discrimination in Employment Act

The ADEA makes it unlawful for an employer to discharge an employee "because of such individual's age." 29 U.S.C. § 623(a)(1); *see Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014). ADEA protection extends to individuals who are 40 years of age or older. 29 U.S.C. § 631(a). On a motion for summary judgment, a plaintiff may demonstrate a genuine issue for trial by demonstrating that "the evidence would permit a reasonable factfinder to conclude that the plaintiff's

. . . [age]. . . caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz v. Werner Enters., Inc.*, No. 15-2574, 2016 WL 4411434, at *4 (7th Cir. Aug. 19, 2016); *see also Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). A plaintiff may also make a case for going to trial under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Ortiz*, 2016 WL 4411434, at *4; *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012) (finding that the *McDonnell Douglas* burden-shifting framework is applicable in ADEA cases after *Gross v. FBL Financial Services*, 557 U.S. 167, 176 (2009)); *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010). Plaintiffs assert both methods in response to Lake County's Motion for Summary Judgment.[3]

In this case, Plaintiffs, all of whom were over age sixty-five at the time their employment ws terminated, are asserting theories of disparate treatment and disparate impact. First, "[i]n a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993);

---

[3] Plaintiffs also rely on both methods as the basis for their own Motion for Partial Summary Judgment to prove that they are entitled to summary judgment on the issue of liability (i.e. that they are entitled to a finding that Lake County discriminated based on age). Plaintiffs argue that they can "establish discrimination directly or indirectly, the latter through the approach used in *McDonnell Douglas Corp. v. Green*." (Pls. Mot. 12). However, those methods are used by a plaintiff to survive an employer's motion for summary judgment by showing that a genuine dispute exists for trial. Plaintiffs' own case law explains as much. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009) ("A plaintiff proceeding under the direct method *survives* summary judgment by creating triable issues as to whether discrimination motivated the adverse employment action.") (emphasis added). Thus, a plaintiff who offers evidence of discrimination or satisfies the prima facie case under *McDonnell Douglas* and shows that the employer's legitimate non-discriminatory reason for the adverse employment action was pretextual does not win summary judgment on the issue of liability but rather preserves the right to go to trial.

Plaintiffs are correct that an ADEA plaintiff may win summary judgment on the issue of liability by demonstrating that there is no question of material fact and that he is entitled to judgment as a matter of law by proving each element of the legal claim. *See Celotex*, 477 U.S. at 322-23; *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *see also Lenzo v. Sch. City of East Chicago*, 140 F. Supp. 2d 947, 963 (N.D. Ind. 2001) (granting partial summary judgment for plaintiff because the defendant school corporation's early retirement plan was facially discriminatory). Plaintiffs have not done so in this case.

*see also Kentucky Ret. Sys. v. EEOC*, 554 U.S. 135, 147 (2008). An employer either has a "formal, facially discriminatory policy requiring adverse treatment of employees with that trait" or has a policy that "may have been motivated by the protected trait on an ad hoc, informal basis." *Id*. Plaintiffs assert that Lake County's plan was facially discriminatory because one of the four criteria for identifying an "affected employee" subject to termination is that the employee is age sixty-five or older.

However, in *Gross v. FBL Financial Services*, the United States Supreme Court held that a plaintiff must prove that age was the "but-for" cause of the adverse employment action—that the employer engaged in disparate treatment "because of" the employee's age. 557 U.S. at 176 (rejecting a "mixed motive" theory of liability for claims brought under the ADEA); *see also Hazen*, 507 U.S. at 609 ("We now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."). The Supreme Court explained that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross*, 557 U.S. at 176. "Hence, the burden of persuasion necessary to establish employer liability is the same in alleged mixed-motives cases as in any other ADEA disparate-treatment action. A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Id*. at 177-78 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)). Evidence that discrimination was a "motivating factor" is insufficient; at the summary judgment stage, a plaintiff must offer evidence that could support a jury verdict that age was a "but-for cause" of the employment action. *Fleishman*, 698 F.3d at 603-604 (emphasis added) (citing *Gross*, 557 U.S. at 176); *Lindsey v. Walgreen Co.*, 615 F.3d

873, 876 (7th Cir. 2010) (recognizing that it is not enough to establish that age was a motivating factor because *Gross* clarified that a plaintiff must show that age was the determinative factor (citing *Gross*, 557 U.S. at 176)).

"While it is unlawful to discriminate on the basis of age, it is not necessarily unlawful to discriminate on the basis of other characteristics that *correlate* with age." *Walker v. Monsanto Co. Pension Plan*, 636 F. Supp. 2d 774 (S.D. Ill. 2009) (emphasis added) (citing *Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636, 642 (7th Cir. 2006)); *see also Cooper*, 457 F.3d at 642 (citing *Hazen Paper*, 507 U.S. at 611-12; *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997); *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997)), *cert. denied*, 549 U.S. 1175 (2007).

In its Motion for Summary Judgment, Lake County recognizes that the decision to terminate Plaintiffs' employment was facially discriminatory because being over the age of sixty-five was one of the four criteria that defined an "affected employee" subject to termination, with the criteria listed in both the PowerPoint presentation and the August 21, 2013 letter from Dabertin. However, Lake County argues that the undisputed evidence demonstrates that Lake County made the decision based on the financial impact of moving Plaintiffs to the self-insurance program and the potential loss of the Aetna supplemental insurance plan for all retirees in light of changes forced by the Affordable Care Act if those affected employees remained employed part-time. Lake County asserts that the decision was not "because of" age; rather, the decision was made based on the "affected employees" meeting the other three criteria, which are that each employee (1) had retired from and then was rehired part-time by Lake County; (2) has Medicare as Primary Medical Coverage; and (3) is eligible for or currently has Aetna as the Lake County Government Retiree Health Care Plan.

The evidence demonstrates that being over age sixty-five was not the "but-for" cause of the decision to terminate Plaintiffs' employment, and Plaintiffs have not raised a genuine dispute as to the facts. First, each of the thirty Plaintiffs was not only over sixty-five years old but also met all three other criteria. Both the August 21, 2013 and September 12, 2013 letters explain that the Affordable Care Act and the related impact on the retiree-only health care plan motivated Lake County to terminate Plaintiffs' employment. As testified to by David Baker, the third-party administrator for Lake County's self-insurance, if the rehired retirees remained employed part-time and continued to receive Medicare and the Aetna supplemental insurance, Aetna would no longer be considered a Medicare supplement and the Plan would lose its exemption as a retiree-only plan, jeopardizing the plan for all retirees.

Second, approximately 175 current employees, or ten percent of Lake County's workforce, are over the age of sixty-five. These 175 employees were not terminated along with Plaintiffs because, despite being over the age of sixty-five, they did not meet all three other criteria. Plaintiffs do not acknowledge this fact or respond to Lake County's assertion that this fact demonstrates that age was not the but-for cause of Plaintiffs' termination. That Plaintiffs were treated less favorably than other individuals of the same age is not evidence of disparate treatment based on age. Any inference of age discrimination is undercut by the fact that the 175 other employees over the age of sixty-five retained their jobs. *See Ripberger*, 773 F.3d at 880-81.

Plaintiffs' own testimony further supports Lake County's assertion that Plaintiffs were terminated for health insurance and financial concerns rather than age-related discrimination. All Plaintiffs admitted in their depositions that they met the four criteria in the letter. And, no Plaintiff testified that he or she was ever the subject of age-based comments, harassment, or animus. *See*

*Kentucky*, 554 U.S. at 146 ("Kentucky's system does not rely on any of the sorts of stereotypical assumptions that the ADEA sought to eradicate."); *Hazen Paper*, 507 U.S. at 612 (finding that the decision to dismiss the employee, which was based on pension status (which was related to years of service and not age), was not based on a "prohibited stereotype" of older workers and did not produce any "attendant stigma" and that the decision was not "the result of an inaccurate and denigrating generalization about age"). Several Plaintiffs testified that their supervisors were upset when they learned of Lake County's decision and did not want the employee terminated.

Finally, it is undisputed that Aetna and Grudzien concluded that the changes to Medicare's Secondary Payer Rules prevented Lake County from rehiring part-time retirees who were receiving benefits under Lake County's retiree health program. The evidence shows that Lake County relied on this information to make the termination decisions in this case. To keep Plaintiffs employed with benefits, Lake County would have had to hire them as full-time employees and provide them with the corresponding benefits or provide Plaintiffs with full-time active employee health insurance even though they were only working part-time, options Lake County could not financially afford.

In response, Plaintiffs attempt to raise a genuine dispute of fact as to whether Lake County terminated Plaintiffs' employment on that basis rather than because of age. None of the facts asserted by Plaintiffs bring into question the reason for Lake County's decision. First, Plaintiffs note that Lake County's decision was not due to a reduction in force. This is true; Plaintiffs were terminated because they met all four factors. Although a reduction in force is a legitimate nondiscriminatory reason for termination, *see Fuqua v. Donahoe*, No. 12 C 6977, 2015 WL 5775602, at *5 (N.D. Ill. Sept. 30, 2015) (citing cases), *aff'd*, *Fuqua v. Brennan*, 645 F. App'x 519 (7th Cir. 2016), *reh'g denied* (June 28, 2016), it is not the only nondiscriminatory reason.

Second, Plaintiffs assert that it is irrelevant that, going forward, Aetna required the exclusion of rehired retirees because Lake County had an obligation to treat Plaintiffs, as current active employees, in a manner that did not discriminate based on age. The fact is not irrelevant because Lake County had to certify that by September 30, 2013, it no longer had any active employees insured under the retiree-only plan. Moreover, as discussed above, the evidence of record shows that Lake County did not discriminate based on age simply because portions of the decision were based on factors that *correlate* with age. *See Cooper*, 457 F.3d at 642.

Next, Plaintiffs assert that Lake County gave varying and inconsistent reasons for terminating their employment. But the evidence cited by Plaintiffs does not show any change or inconsistency in Lake County's reason. In support, Plaintiffs note that the only legal opinion obtained by Lake County was that of Attorney Grudzien and that Grudzien only recommended that Lake County not rehire retirees in the future and did not offer an opinion regarding Plaintiffs who were retirees then-currently working for Lake County. Indeed, Grudzien testified that he did not opine as to Plaintiffs' employment and did not recommend that Plaintiffs be terminated. However, Dabertin testified that the PowerPoint presentation and the August 21, 2013 letter, both of which set out the four criteria, were authored after Grudzien had spoken with the Commissioners about his opinion regarding rehiring retirees. It is undisputed that Grudzien "advised [Lake County] not to rehire any retirees." Aetna told Lake County that no active employees could be on the plan. Plaintiffs were rehired retirees in part-time positions receiving Medicare and the Aetna supplemental insurance, just like those individuals addressed in Grudzien's opinion and who were the subject of Aetna's concern. The Commissioners' decision to terminate Plaintiffs' employment is consistent with Grudzien's opinion.

Moreover, the full text of Grudzien's September 7, 2013 letter sets out the basis for giving the opinion to be Lake County's financial concerns regarding the status of the Aetna coverage for rehired retirees. Also, the recitation of the four factors in both Dabertin's letter and the PowerPoint presentation as the basis for the decision further support the consistency of Lake County's reasoning throughout the process. And, Dabertin, Blanchard, Repay, and Scheub all testified that the reasons for the terminations were stated in the August 21, 2013 letter.

Finally, Plaintiffs assert that the authorship of the PowerPoint presentation and of the content of Dabertin's letter are in question, noting that Dabertin and Repay both suggested in their depositions that the materials were prepared by Attorney Dull but that Attorney Dull later testified that he was not involved. The question of *who* authored those materials is irrelevant given that all of the documents and testimony are consistent as to Lake County's intent and all came after Grudzien gave advice to the Commissioners. Plaintiffs offer no explanation as to how the question of authorship suggests inconsistency.

Plaintiffs have not identified any genuine dispute of fact as to Lake County's reason for terminating their employment or that they were identified as "affected employees" because they met all four criteria. Thus, being age sixty-five or older was a necessary but insufficient factor to become a member of the affected group. Rather, the sufficient condition, the "but-for" cause, was meeting all three other criteria, namely being a part-time employee, being on Medicare for primary insurance coverage, and being a participant in the Aetna supplemental plan.

However, Plaintiffs also argue that their eligibility at age sixty-five for Medicare and for the Aetna supplemental plan is a "proxy for age." In *Hazen Paper*, the United States Supreme Court recognized that pension status could be a "proxy for age" in addressing the question of whether "an

employer's interference with the vesting of pension benefits violate[d] the ADEA," even though the court found that pension status was not a proxy for age in that case. 507 U.S. at 608. In *Hazen Paper*, the employer fired an employee just a few weeks before the employee reached the ten-year service mark required to vest in the employer's pension plan, but the employer offered to retain the employee as a consultant—a position not entitled to pension benefits. *Id*. at 607. The employee sued under the ADEA, arguing that his pension status was empirically correlated with age such that termination based upon his pension status constituted age discrimination. *Id*. at 607-08. The Supreme Court disagreed. *Id*. at 609. The court reasoned that "an employee's age is analytically distinct from his years of service," pointing out that "[a]n employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, may have worked for a particular employer his entire career, while an older worker may have been newly hired." *Id*. at 611 (internal citation omitted). Because age and years of service are analytically distinct, the court noted, "an employer can take account of one while ignoring the other[;] . . . thus[,] it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Id*.

However, the Supreme Court did not preclude the possibility that factors such as pension status and retirement eligibility might be considered a proxy for age in some cases. In fact, the court noted the "special case" when "[p]ension status may be a proxy for age" if "the employer . . . suppose[s] a correlation between the two factors and act[s] accordingly." *Id*. at 613. The court specifically noted that the pension system at issue in that case was based solely on years of service, noting that it would be a different case "where an employee is about to vest in pension benefits as a result of his age, rather than years of service." *Id*.

In *Kentucky Retirement Systems*, the Kentucky "hazardous position" retirement plan imputed unearned years of service credit to workers who became disabled before they became eligible for retirement but did not assign years of credit to otherwise similarly situated workers who became disabled after they were already eligible for retirement. 554 U.S. at 138. The Supreme Court considered the case to be a variation on the "special case" from *Hazen Paper* and asked the question "whether Kentucky's system consequently discriminates against the [post-retirement disabled] workers 'because of . . . age . . . .'" *Id*. at 138, 143. The court found that it did not. *Id*. at 138. The court concluded that the decision to assign extra years of service to those who became disabled before reaching retirement eligibility was based on pension status, not age, even though the result was that a worker under the age of fifty-five received the benefit of imputed years when a worker over the age of fifty-five did not. *Id*. at 147-48.

In making its ruling, the Supreme Court identified several factors to find that the differences in treatment were not "actually motivated" by age. *Id*. at 143. First, age is analytically distinct from pension status. *Id*. Second, the background circumstances consisted of a set of complex systemwide rules that involved pensions and not wages, and all hazardous position workers were subject to the same retirement system at the time they were hired. *Id*. at 143-44. Third, the disability retirement benefits tracked Kentucky's normal retirement rules such that the purpose of the plan was to treat a disabled worker as though he had become disabled after, rather than before, he became eligible for retirement benefits. *Id*. at 144-45. Fourth, the system sometimes worked to the advantage of an older worker. *Id*. at 146. Fifth, Kentucky's system "does not rely on any of the sorts of stereotypical assumptions that the ADEA sought to eradicate. It does not rest on any stereotype about the work capacity of 'older' workers *relative* to 'younger' workers." *Id*. at 146 (citing *General Dynamics*

*Land Sys., Inc. v. Cline*, 540 U.S. 581, 590 (2004)). Sixth, the difficulty of the remedy if the plan were to be found illegal suggests that the plan's legitimate objective and not age actually motivated the plan. *Id.* at 147.

The question before this Court is whether the combination of being over the age of sixty-five along with the three other criteria—that is being (1) a part-time employee, (2) on Medicare for primary insurance coverage, and (3) a participant in the Aetna supplemental plan—is a "proxy for age." The answer is no. Although the three criteria correlate with age, the evidence is that Lake County did not act because it supposed a correlation between these factors and age. Under *Hazen Paper*, the factor motivating Lake County's actions was not only Medicare eligibility or only Aetna eligibility; rather it was the unique combination of the eligibility for both along with working part-time as a rehired retiree and the fact that having these rehired retirees in the plan would cause Lake County to lose its exemption for the retiree-only plan. In fact, being over sixty-five years old and receiving Medicare alone would not be sufficient to be an "affected employee." And, being over sixty-five years old and receiving Medicare and receiving the Aetna retiree benefits would not be sufficient to be an "affected employee." To be an "affected employee," the individual has to meet all of those criteria *and* be working part-time. A retired and rehired part-time worker who has not reached sixty-five would have been treated differently because the employee would not yet have qualified for Medicare and the Aetna supplement, which require attaining age sixty-five, and the person would not have been terminated. But that difference of a few years does not make that individual substantially younger, as is required to show age discrimination. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Duncan v. Fleetwood Motor Homes of Ind., Inc.*,

518 F.3d 486, 493 (7th Cir. 2008); *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643-44 (7th Cir. 2013). And, importantly, Plaintiffs have not identified any such individuals.

Lake County did not use insurance eligibility as a proxy for age because all other employees age sixty-five and older remained employed after Plaintiffs were terminated; Lake County only terminated those employees who met all four factors. And, as discussed above, there is no evidence that Lake County acted based upon age-based stereotypes. Finally, like in *Kentucky*, the complexity of finding a solution to the retiree health insurance situation that arose with the Affordable Care Act suggests that Lake County was not acting based on age.

Plaintiffs cite two cases that found Medicare eligibility to be a proxy for age—*Erie County Retirees Association v. County of Erie*, 220 F.3d 193, 211 (3d Cir. 2000), and *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793 (8th Cir. 2014). Both are distinguishable.

First, in *Erie County*, 220 F.3d 193, 211 (3d Cir. 2000), the Third Circuit Court of Appeals ruled that the practice of providing different benefits to older and younger retirees based on their eligibility for Medicare constitutes age discrimination because Medicare eligibility is an "explicitly" age-related factor, and is thus parallel to the "special case" mentioned by the Court in *Hazen Paper* in which an adverse action is taken against a person because of a particular event, and that event in turn occurs because the person has attained a certain age. *Erie County*, 220 F.3d at 211-212. The Third Circuit Court of Appeals held that because Medicare eligibility follows upon attaining age sixty-five it "is a direct proxy for age." *Id.*

In our case, there is no comparison with younger part-time employees because younger part-time employees did not qualify for health insurance. And, there is no comparison with retirees receiving Medicare and Aetna supplemental insurance because they were not working. Only the

employees who met all four criteria were considered "affected employees." And, in *Erie*, the employees were being treated differently with respect to the health care benefits themselves. In our case, Plaintiffs are not alleging that the health care options available to them are discriminatory but rather that the basis for their termination is discriminatory. It is tempting to follow the logic that Medicare and Aetna eligibility is necessarily tied to age as it is impossible to account for the former while ignoring the latter. But, the potential proxies (those *just* eligible for Medicare and Aetna) are much larger than Plaintiffs who meet all four criteria. *See Bowers v Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 519 (D.N.J. 2009) ("The link between special education and disability status is much more direct than in proxy cases where the classification in question was found merely to correlate with the protected category. While the potential proxies in *Community Services* and *Hazen Paper* encompassed categories of persons beyond the handicapped and the elderly, respectively, the proxy category here—the special education population—is no more broad that the suspect classification in question.")

Plaintiffs also cite the following passage from *Erie County* to suggest that evidence of a malevolent motive should not be considered:

> The fact that there is no reason to believe that the County possessed a malevolent motive or acted on the basis of hostile age-based stereotypes is irrelevant. The Supreme Court has indicated that a policy explicitly based on a prohibited factor—such as sex or age—is illegal regardless of the underlying motive:
>
>> [T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect. Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination . . . . The beneficence of an employer's purpose does not undermine the conclusion that an explicit gender-based policy is sex discrimination . . . .

*Erie County*, 220 F.3d at 212-213 (quoting *Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 199-200 (1991); citing *City of Los Angeles Dep't of Water and Power v. Manhart*, 435 U.S. 702, 704-18 (1978) (holding that employer's policy requiring female employees to make larger pension fund contributions than male employees violated Title VII even though the policy merely sought to take into account the well-established fact of female longevity)). However, in both *Johnson Controls* and *Manhart*, the policies were facially discriminatory based on the plaintiffs' female gender, a category that applies to all women. In our case, the category of individuals over age sixty-five is much broader than the small group of Plaintiffs who meet all four factors.

Also, both *Hazen Paper* and *Kentucky*, Supreme Court cases, considered motive and whether the employer acted on age stereotypes in the context of analyzing whether a pension was a "proxy for age." Like in *Hazen Paper* and *Kentucky*, this is not a case in which there is any evidence that the employees over age sixty-five were being "deprived of employment on the basis of inaccurate and stigmatizing stereotypes." *Hazen Paper*, 507 U.S. at 610; *Kentucky*, 554 U.S. at 146. The only evidence is that Lake County's motivation was concern for the viability of the retiree-only healthcare plan in light of the changes brought about by the Affordable Care Act. Other cases continue to look at prohibited motivation based on stereotyping. *See, e.g.*, *Hilde v. City of Eveleth*, 777 F.3d 998, 1006 (D. Minn. 2015) (finding, in a case in which the plaintiff was denied consideration for promotion to chief of police because he was retirement eligible, that "[t]o assume that Hilde was uncommitted to a position because his age made him retirement-eligible is age-stereotyping that the ADEA prohibits" (citing *Hazen Paper*, 507 U.S. at 610-11)).

Second, in *Tramp*, the employer underwent a reduction in force because it was faced with economic difficulties. 768 F.3d at 796. Subsequently, the employer experienced a significant

increase in its group health plan premiums, and the company sought new quotes for its health plan. *Id*. Learning that people over the age of sixty-five "usually don't get quoted" for the insurance policy because they are Medicare eligible, the employer asked the plaintiff to apply for Medicare to save the company money. *Id*. at 796-97. The plaintiff refused, and she was ultimately terminated in a subsequent reduction in force. *Id.* at 797. The employer stated that the plaintiff was fired for poor job performance. The Eighth Circuit Court of Appeals found that the employer's perception of insurance premiums was not divorced from age in the same sense as pension benefits are divorced from age and held that it was possible that a reasonable jury could conclude from the evidence that the employer believed that age and insurance premiums were not analytically distinct and that the decision was made based on age and not job performance. *Id*. at 801-03 (citing *EEOC v. City of Independence, Mo.*, 471 F.3d 891, 896 (8th Cir. 2006) ("The key is what the employer supposes about age . . . .")). *Tramp* is distinguishable for the same reasons as *Erie*, namely that age was not a switch that when flipped placed the Plaintiffs into the "affected employee" category. Rather, it was the combination of all four factors.

Considering the evidence as a whole, Plaintiffs have not offered evidence from which a reasonable juror could find that Lake County acted because of their age. It is undisputed that Lake County believed that, if Plaintiffs had remained as part-time employees and as participants in the Aetna supplemental insurance plan given the plan's terms and the changes to the Medicare Secondary Payer rules, Lake County would have lost its exemption for the Aenta supplemental insurance plan as a retiree-only plan. Lake County believed, based on Aetna's representations and Grudzien's opinion, that the Aetna plan could not have active employees as participants as a result of the Affordable Care Act. Otherwise, the Aetna plan would have become primary to the Medicare

coverage and would no longer be a supplemental plan. Lake County believed that if Plaintiffs remained in the plan and in their positions, the plan would no longer function as it should and would result in a loss of coverage to all other Lake County retirees in the plan. Plaintiffs offer no evidence to dispute these beliefs.

Plaintiffs also argue that they should survive Defendants' Motion for Summary Judgment under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this test, a plaintiff has the burden of establishing a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he met the employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 463 (7th Cir. 2014) (citing *Tank v. T-Mobile USA, Inc.*, 78 F.3d 800, 809 (7th Cir. 2014). If a plaintiff succeeds in establishing a prima face case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *Id*. The plaintiff must then offer evidence that the employer's stated reason is a pretext for discrimination. *Id.* (citing *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 511-12 (7th Cir. 2012)).

Although Plaintiffs correctly recite the elements of the prima facie case as well as the burden shifting framework, Plaintiffs make no attempt to show factually that they meet the prima facie case. Most importantly, in neither their response to Lake County's Motion for Summary Judgment or their own Motion for Partial Summary Judgment do Plaintiffs identify any similarly situated individuals who were treated differently. In contrast, Lake County identifies two potential comparator classes based on Plaintiffs' framing of the issue in this case; Plaintiffs do not respond to either proposed class of comparators nor do they offer their own in reply.

In proposing the two comparator classes, Lake County notes that Plaintiffs' complaint is not that younger workers under the age of sixty-five (who are ineligible for Medicare) are treated better than Plaintiffs in terms of health insurance benefits—the issue in *Erie*. Rather, Plaintiffs complain that they lost their jobs because they could not remain as part-time employees and at the same time maintain participation in the Aetna supplemental health insurance plan along with Medicare. Thus, Lake County suggests that Plaintiffs' age discrimination theory is that they are being treated worse than either (1) current part-time Lake County employees age sixty-five or over and/or (2) former Lake County employees over the age of sixty-five who have retired and no longer work for the County. Neither comparator class is similarly situated. Any current part-time Lake County employees age sixty-five or over who work part-time do not have the Aetna supplement. Thus, they are materially different. Former employees, who are retired and are eligible for the supplement, receive the supplement and, therefore, are treated the same as Plaintiffs; both groups are no longer active Lake County employees and both receive the supplement. Regardless, any difference in treatment between Plaintiffs and these groups cannot be "because of" age since both groups are made up entirely of older workers.

In their responses to Interrogatory No. 16 regarding identifying any similarly situated workers, each Plaintiff writes: "I am only aware that I was treated differently than other part-time workers who were under the age of sixty-five, as I was informed by the County, in writing, that my employment was terminated because I was over the age of sixty-five." *See, e.g.* (Pls. Br., Ex. 18, p. 6). But simply being part-time does not make a younger employee similarly situated to Plaintiffs. The younger part-time employees would also have to be eligible for Medicare and would have to

have been receiving Aetna supplemental insurance. Plaintiffs identify no such individuals. Plaintiffs have not made out a prima facie case.

Even if Plaintiffs could establish a prima facie case of age discrimination, Plaintiffs have not shown that Lake County's reason for firing Plaintiffs—that Plaintiffs' part-time employment as rehired retirees receiving Medicare and Aetna supplemental health insurance jeopardized the retiree-only plan—was pretextual or unworthy of credence. "Pretext means a dishonest explanation, a lie rather than an oddity or an error. Pretext is more than a mistake on the part of the employer; it is a phony excuse. Showing pretext requires proof that the defendant's explanation is unworthy of credence." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (citations, alterations, and quotation marks omitted); *see also Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (stating that even if an employer's reason for terminating an employee is "mistaken, ill considered or foolish," pretext has not been shown as long as the employer "honestly believed those reasons"). "The only concern in reviewing an employer's reasons for [an employment action] is the honesty of the employer's belief." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003).

Plaintiffs offer no evidence that Lake County did not honestly believe that Plaintiffs' employment had to be terminated by September 30, 2013, in order to avoid losing the exemption for the retiree-only health care plan. Whether Lake County was correct and whether Lake County should have relied on Grudzien's opinion to make the decision to terminate Plaintiffs does not go to the honesty of Lake County's belief but rather to its correctness. *See Holshouser v. Abbott Labs.*, 31 F. Supp. 3d 964, 971-72 (N.D. Ill. 2014) ("It is well-settled in this Circuit and others that, where an employer honestly believes the reasons provided for a[n] [adverse action] . . . , a plaintiff cannot

establish pretext, even if those reasons were wrongheaded in some manner."). Plaintiff cannot survive summary judgment on the *McDonnell Douglas* burden-shifting framework.

"When all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014). Because Plaintiffs have failed to point to any evidence from which a jury could conclude that age was the "but-for" cause of Plaintiffs' termination, Plaintiffs cannot survive summary judgment on their age discrimination claim based on a theory of disparate treatment.

Plaintiffs also assert their claim of age discrimination under a disparate impact theory, which is available under the ADEA. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 240 (2005). A claim of "disparate impact" allows for recovery for "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n. 15 (1977) (Title VII); *see also Zmigrocki v. Cook Cty.*, No. 12 C 9697 2015 WL 500621, at *1-2 (N.D. Ill. Feb. 4, 2015) (ADEA). To establish a prima facie case of disparate impact, "the plaintiff is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994-95 (1988)). In addition, the plaintiff must offer "statistical evidence of a kind and degree sufficient to show that the practice in question has" disproportionally affected older workers because of their age. *Id.* (quoting *Watson*, 487 U.S. at 994-95). Once the plaintiff offers sufficient statistical evidence, then

the burden shifts "to the defendant-employer to demonstrate that the employment practice is job related for the position in question and consistent with business necessity." *Id.*

Although Plaintiffs accurately cite the law for a disparate impact claim, Plaintiffs' entire analysis is the statement: "[a] reasonable jury could conclude that the considerations made by the defendant were based on the plaintiff's age and that there[sic] the defendant's actions are not based on a reasonable factor other than age." (Pls. Resp. 23); *see also* (Pls. SJ Br. 20-21). This general statement is insufficient to meet Plaintiffs' burden of identifying the specific employment practices at issue. In the interests of justice, the Court recognizes that the employment practice that led to Plaintiffs' termination, discussed throughout the briefing, is the selection of "affected employees" meeting the four criteria. But, Plaintiffs make no attempt, either in response to Lake County's Motion for Summary Judgment, or in support of their own, to show how the use of the four factors to terminate Plaintiffs' employment fell more harshly on them than another group. As discussed previously, Plaintiffs do not identify any other group. Nor do Plaintiffs offer any statistical evidence to establish a prima facie case. Thus, Plaintiffs have failed to meet their burden to establish a prima facie case of disparate impact, and summary judgment in favor of Defendant Lake County on Plaintiffs' disparate impact theory is appropriate.

Finally, even if Plaintiffs had successfully made out a prima facie case of disparate impact, Lake County has established its affirmative defense of a reasonable factor other than age under 29 U.S.C. § 623(f)(1). *See Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 87 (2008) (holding that, when an employer faces a disparate impact claim, the employer bears the burden of producing evidence to raise the defense and to persuade the fact finder of the defense's merit). Lake County has shown that the reasonable factor other than age was Aetna's position, confirmed by Grudzien,

that having rehired retirees working part-time on the Aetna plan would violate the Affordable Care Act. As discussed above, Plaintiffs have not identified any genuine dispute as to the honesty of that belief. Nor do Plaintiffs challenge the reasonableness of that basis for terminating Plaintiffs' employment. Thus, for this additional reason, Plaintiffs cannot survive summary judgment on their disparate impact theory.

Because Plaintiffs' age discrimination claim cannot survive summary judgment under either theory, the Court grants Defendant Lake County's Motion for Summary Judgment on Plaintiffs' ADEA claim and denies Plaintiffs' Motion for Partial Summary Judgment on the same claim.

### B. 42 U.S.C. § 1983—Equal Protection Clause

In their Complaint, Plaintiffs allege that Lake County's decision to terminate their employment violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, bringing the claim under 42 U.S.C. § 1983. *See Levin v. Madigan*, 692 F.3d 607, 617 (7th Cir. 2012) (holding that the ADEA does not preclude a § 1983 equal protection claim based on age).

Because age is not a suspect classification under the Equal Protection Clause, the claim is reviewed under the rational basis standard. *Gregory v. Ashcroft*, 501 U.S. 452 (1991); *Smith v. City of Chicago*, 457 F.3d 643, 650-51 (7th Cir. 2006); *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 282 (7th Cir. 2003). To prevail under this standard of review, a plaintiff must prove that the defendant: "(1) intentionally treated him differently from others similarly situated; (2) intentionally treated him differently because of his membership in the class to which he belonged; and (3) the difference in treatment was not rationally related to a legitimate state

interest." *Smith*, 457 F.3d at 650-51 (citing *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002)).

In this case, Lake County has demonstrated that the decision to terminate Plaintiffs' employment was rationally related to a legitimate state interest. Based on Aetna's position and Grudzien's opinion, keeping rehired retirees on the Aetna supplemental insurance plan would have threatened the viability of the supplemental insurance plan for all other retirees and would have been prohibitively expensive. *See Jackson v. Lain*, No. 2:13-CV-198, 2015 WL 4426141, at *6 (N.D. Ind. July 20, 2015) (finding that cost-conscious use of public funds is rationally related to a legitimate state interest in denying the overtime compensation requests of a county employee and ultimately terminating his employment). Therefore, the Court grants summary judgment in favor of Defendant Lake County on Plaintiffs' § 1983 Fourth Amendment equal protection claim and denies Plaintiffs' Motion for Partial Summary Judgment on the same claim.

## CONCLUSION

Based on the foregoing, the Court hereby (1) **GRANTS** Defendant's Motion for Summary Judgment [DE 40]; (2) **DENIES** Plaintiffs' Motion for Partial Summary Judgment [DE 42]; (3) **DENIES** Defendant's Motion to Submit Omitted Exhibit [DE 45]; (4) **GRANTS** Plaintiffs' Motion to Strike [DE 49]; and **DENIES** Defendant's Request for Oral Argument [DE 53].

The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant Lake County, Indiana, and against Plaintiffs.

So ORDERED this 14th day of September, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT