# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

August 17, 2017

To:     Robert N. Trgovich
        UNITED STATES DISTRICT COURT
        Northern District of Indiana
        Hammond, IN 46320-0000

|  |  |
|---|---|
| No. 16-3665 | AARON CARSON, et al.,<br>Plaintiffs - Appellants<br><br>and<br><br>RONALD PAULSIN,<br>Intervening Plaintiff - Appellant<br><br>v.<br><br>LAKE COUNTY, INDIANA,<br>Defendant - Appellee |
| **Originating Case Information:** | |
| District Court No: 2:14-cv-00117-PRC<br>Northern District of Indiana, Hammond Division<br>Magistrate Judge Paul R. Cherry | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:            No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                        **Received by:**


_____                    _____


form name: **c7_Mandate**(form ID: **135**)

In the

# United States Court of Appeals

### For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

_____

No. 16-3665

AARON CARSON, et al.,

*Plaintiffs-Appellants,*

*and*

RONALD PAULSIN,

*Intervenor-Appellant,*

*v.*

LAKE COUNTY, INDIANA,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:14-CV-117-PRC — **Paul R. Cherry**, *Magistrate Judge*.

_____

ARGUED APRIL 5, 2017 — DECIDED JULY 26, 2017

_____

Before WOOD, *Chief Judge*, and FLAUM and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. During the recession of the late 2000s, Lake County, Indiana, experienced an emergency cash shortage. The County's positive cash flow declined from $51

million in 2007 to $9.9 million in 2008. By 2009, the County was operating at a deficit, and by 2013 its general fund was more than $1 million in the red. During that same period, the County's self-insurance fund, which it used to cover employee healthcare costs, foundered. The fund had a balance of over $10 million in 2007; that balance was wiped out by 2013.

Something had to be done. In an attempt to stanch its financial bleeding, the County offered retirement incentives to employees age 65 or older. With one incentive package, retirees were entitled to five years of supplemental health insurance (secondary to Medicare coverage) through Aetna. Retirees who selected this package were also permitted to return to work on a part-time basis, though their employment remained at-will.

The incentive package was attractive, and a number of employees took advantage of it. But the County had miscalculated. In 2013, Aetna informed the County that current employees were ineligible for the supplemental insurance coverage. If retirees who had been rehired as part-time employees remained on the plan, the plan would no longer qualify for special exemptions under federal law. In that case, the County's insurance costs would skyrocket. The County was in no position to absorb those added costs. It therefore notified all rehired retirees who were covered by both Medicare and the Aetna supplement that their employment would end effective October 1, 2013.

A group of rehired retirees who were fired in October 2013 filed this suit alleging that the County had discriminated against them on the basis of their age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.

No. 16-3665                                                    3

§§ 621 *et seq.*, and the Fourteenth Amendment's Equal Protection Clause. The district court granted summary judgment to the County.

We affirm. We see no evidence that the County engaged in unlawful age discrimination. Age was a necessary but insufficient factor in the County's decision-making process. The key criterion that distinguished the terminated employees from all other County employees was not their age but rather their participation in the Aetna plan. The equal protection claim fails because the undisputed facts show that the County's action was rationally related to a legitimate state interest: preserving supplemental insurance coverage for its retirees while avoiding further financial hardship.

I.  *Factual and Procedural Background*

A.  *Lake County's Supplemental Insurance Debacle*

Although plaintiffs' claims arise under the ADEA and the Equal Protection Clause, those claims (and the County's actions that precipitated the claims) cannot be analyzed properly without understanding some basics of health insurance law. Federal law requires group health insurance plans such as those sponsored by employers to comply with a host of terms governing portability, coverage, rating, renewability, and non-discrimination. Many of these requirements were put in place as part of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010). Others were imposed earlier under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, or prior legislation.

Federal law also carves out exemptions for special types of health insurance, including so-called "retiree-only" plans.

These plans pay benefits secondary to Medicare and are exempt from many of the requirements of HIPAA and the Affordable Care Act that apply to primary policies. Retiree-only plans help Medicare recipients manage their out-of-pocket costs, including co-insurance and deductibles. For retirees, especially those living on modest or fixed incomes, supplemental coverage helps ensure access to essential care.

In 2008 and 2010, Lake County offered early retirement incentives to all Medicare-eligible employees who had at least five years of continuous service and who were age 65 or older. These employees could select either a lump-sum payment or five years of supplemental health insurance at the same relatively low premium that full-time County employees paid for their health insurance. Retirees who selected the insurance package had a further choice: they could return to work on a part-time basis or receive a small monthly stipend.

The record on appeal does not show how many County employees chose each option, but some of the plaintiffs in this case selected the insurance and part-time re-employment package. Other plaintiffs, apparently, selected the lump-sum package or retired through the normal retirement process but were later rehired on a part-time basis. The salient point is that each plaintiff at the time of termination was employed part-time and was covered by both Medicare and Aetna supplemental insurance.

According to Thomas Dabertin, the County's human resources consultant, in 2013 Aetna informed the County that current employees (including rehired retirees) could not participate in the supplemental insurance plan. At the time, the County believed this prohibition was a consequence of the Af-

No. 16-3665                                                    5

fordable Care Act. However, the statutory language that au-
thorizes retiree-only plans actually predates the Affordable
Care Act. As best we can tell, the County's arrangement of
providing its rehired retirees with supplemental insurance
(secondary to Medicare) that did not conform to group health
plan requirements under federal law was impermissible even
before the Affordable Care Act took effect. See 26 U.S.C.
§ 9831(a) ("The requirements of this chapter shall not apply to
… (2) any group health plan for any plan year if, on the first
day of such plan year, such plan has *less than 2 participants who
are current employees*.") (emphasis added); 29 U.S.C. § 1191a(a)
("The requirements of this part … shall not apply to any
group health plan … for any plan year if, on the first day of
such plan year, such plan has *less than 2 participants who are
current employees*.") (emphasis added).[1]

   Regardless of the prior legality of the County's insurance
arrangement, one thing was clear when Aetna raised the issue
in 2013: if the County did not act quickly, it risked either for-
feiting its supplemental insurance coverage altogether or in-
curring substantial costs to bring the plan into compliance
with federal rules and regulations governing group health in-
surance. Neither scenario was acceptable for a local govern-
ment still struggling to regain its financial footing.

   Shortly after receiving the bad news from Aetna, the
County retained Larry Grudzien, an attorney specializing in

--------

[1] At oral argument, we asked the parties to explain whether the
County's health insurance arrangement was legitimate under federal law
as it existed prior to the Affordable Care Act, and if so, the statutory or
regulatory support for the arrangement. Neither party could offer any
such explanation, reinforcing our doubts about whether the arrangement
was ever lawful.

employee benefits. Grudzien confirmed Aetna's position, writing that a "retiree who is rehired as an employee … should be treated as a current employee that counts against retiree only plan status and should be covered under the ERISA plan maintained for purposes of current (i.e., active) employees immediately upon rehire." Grudzien advised the County "not to rehire any retirees," or, alternatively, to rehire them full-time and offer them regular benefits.

In light of Aetna's warning and Grudzien's recommendation, the County decided to terminate its rehired retirees. In letters dated August 21 and September 12, 2013, the County informed a group of twenty-eight employees that their employment would end effective October 1, 2013. As the County explained in its letters, these employees were selected because they met each of four criteria: (1) they had retired from County service and were later rehired part-time; (2) they were age 65 or older; (3) they were receiving Medicare as their primary insurance; and (4) they were enrolled in the Aetna supplement.[2]

A much larger group of employees age 65 or older who were not enrolled in the Aetna supplement continued their employment with the County. As of November 2015, between 150 and 200 active employees, or roughly ten percent of the total County workforce, were age 65 or older.

---

[2] Plaintiffs observe that there is some disagreement among County officials as to who was responsible for selecting the four termination criteria. This dispute is immaterial. There is no evidence that any County official harbored any age-based animus leading to plaintiffs' terminations. Instead, the evidence shows that the County acted to preserve affordable supplemental insurance for all of its retirees, a group that includes those affected by the termination decision but also many others.

No. 16-3665                                           7

B.  *Procedural History*

Plaintiffs, a subset of the twenty-eight part-time employees who were terminated in 2013, brought this suit in federal court accusing the County of age discrimination in violation of the ADEA and the Fourteenth Amendment's Equal Protection Clause. Following discovery, the parties filed cross-motions for summary judgment.

The district court denied plaintiffs' motion and granted the County's motion. *Carson v. Lake County*, No. 2:14-CV-117-PRC, 2016 WL 4798965 (N.D. Ind. Sept. 14, 2016). The court concluded that plaintiffs had come forward with insufficient direct or circumstantial evidence of age discrimination to support their ADEA claim. As the court explained, "being age sixty-five or older was a necessary but insufficient factor to become a member of the affected group," as only those employees who met all four criteria (including participation in the Aetna plan) were terminated. *Id.* at *11. Plaintiffs' equal protection claim likewise failed. Given the dilemma facing the County if it retained plaintiffs on its payroll—i.e., loss of supplemental insurance or a dramatic rate hike—the County's action was rationally related to a legitimate governmental interest. *Id.* at *17. The district court entered final judgment for the County. Plaintiffs have appealed.

II.  *Analysis*

We review *de novo* the district court's decision granting the County's motion for summary judgment, viewing all facts and drawing all reasonable inferences in favor of the plaintiffs. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001).

8                                                          No. 16-3665

A.  *Age Discrimination in Employment Act*

    1.  *Legal Framework*

Congress enacted the ADEA in 1967 to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). The statute, which extends protection to workers age 40 or older, § 631(a), makes it unlawful for an employer, among other things, "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," § 623(a)(1).

By its terms the ADEA proscribes disparate treatment, where "liability depends on whether the protected trait … actually motivated the employer's [adverse] decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). The Supreme Court has held that disparate impact claims are also cognizable under the ADEA. See *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005). "Claims of disparate treatment may be distinguished from claims that stress 'disparate impact'" in that the "latter involve employment practices that are facially neutral in their treatment of different groups but that … fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).[3]

---

    [3] Plaintiffs proceed primarily under a disparate treatment theory but argue (summarily) that they may also prove their claim under a disparate impact theory. We address both theories.

No. 16-3665                                          9

### 2. *Disparate Treatment*

A plaintiff seeking to recover for disparate treatment under the ADEA must "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 180 (2009); *Fleishman v. Continental Casualty Co.*, 698 F.3d 598, 603 (7th Cir. 2012). In this respect, the ADEA is narrower than Title VII of the Civil Rights Act of 1964, as Title VII also protects against mixed-motive discrimination. See *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007).

An ADEA plaintiff may proceed by introducing direct or circumstantial evidence that her employer took an adverse action against her because of her age. See *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003), overruled in part on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Alternatively, a plaintiff may proceed through the burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the burden-shifting approach, the plaintiff must come forward with evidence showing that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). If the plaintiff has established this prima facie case, the burden shifts "to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* (citation omitted).

However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* her age. See *Ortiz*, 834 F.3d at 765 ("Th[e] legal standard … is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge or other adverse employment action. Evidence must be considered as a whole … .").[4]

a. *Facially Discriminatory Action*

Plaintiffs view this case as straightforward. They argue that the County's termination decision was discriminatory on its face. Since all part-time employees who were terminated on October 1, 2013 were age 65 or older, and since age was one of the criteria listed in the termination letter, plaintiffs assert that "age was a but-for cause, as their age was a necessary condition for the defendant's decision to terminate them."

The problem is that age over 65, while a characteristic common to all terminated employees, was not the impetus for the County's decision. It is true, as plaintiffs observe, that an ADEA plaintiff alleging disparate treatment need not prove that age was the sole motivation underlying an adverse action. But the plaintiff must show that age was a "'determining

---

[4] The plaintiff in *Ortiz* brought employment discrimination claims under 42 U.S.C. § 1981 and Illinois law. However, the principle that a district court assessing an employment discrimination claim must consider all admissible evidence at the summary judgment stage applies with equal force to age discrimination claims under the ADEA.

No. 16-3665                                              11

factor' or a 'but for' element in the decision." *Miller v. American Airlines, Inc.*, 525 F.3d 520, 523 (7th Cir. 2008) (citation omitted). Plaintiffs have not made that showing here.

The employees affected by the County's decision shared *four* characteristics: they were (1) age 65 or older and (2) enrolled in Medicare for their primary health insurance coverage, but also were (3) rehired retirees and (4) most important, enrolled in the Aetna supplemental policy. The County did not terminate these employees because of their ages. It terminated them because they were enrolled in a retiree-only insurance plan in which current employees could not participate. If these rehired retirees had kept their jobs and remained on the Aetna supplemental health insurance plan in violation of federal law and the County's insurance contract, they would have—in attorney Larry Grudzien's words—blown the plan apart.

Plaintiffs argue, however, that Medicare eligibility (and, presumably, enrollment in a Medicare supplement like the Aetna plan) may function as a proxy for age, such that an employer's decision to terminate an employee based on such insurance coverage is a form of implicit age discrimination.

The Supreme Court considered an analogous argument in *Hazen Paper*. There, the Court rejected an ADEA claim brought by a plaintiff who was fired shortly before the expiration of the ten-year vesting period for his pension benefits. The Court reasoned that because "age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" 507 U.S. at 611. Nevertheless, the Court left open the possibility that an employer could violate the ADEA if the employer

treated pension status as a proxy for age, "in the sense that the employer may suppose a correlation between the two factors and act accordingly." *Id.* at 613. In such a situation, the employer might indirectly invoke the disparaging stereotypes ("Older employees are likely to be ___") that Congress sought to prohibit. *Id.* at 612.

There is no evidence that the County engaged in any prohibited stereotyping. It did not "suppose a correlation" between plaintiffs' Medicare status and age and "act accordingly." *Id.* at 613. Rather, it fired only those employees who were enrolled in the Aetna supplement, leaving unaffected a large number of employees age 65 or older who had not enrolled in the supplement. The combination of current employment and supplemental insurance participation—not age—was the decisive factor that distinguished the population of terminated employees from the larger County workforce. And the undisputed facts show that economic and regulatory pressures—not generalizations about the capabilities of elderly employees—drove the County's decision.[5]

Even a government policy that affects different age groups differently may not necessarily discriminate *because of* age.

---

[5] Cf. *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793 (8th Cir. 2014) (where former employee refused employer's request that she use Medicare instead of company health plan, and where—shortly after firing employee—employer asked insurance carrier about rate decrease now that "oldest and sickest" employees were no longer employed, reasonable jury could conclude that employer drew a correlation between healthcare costs and plaintiff's age and acted accordingly); *Erie County Retirees Ass'n v. County of Erie*, 220 F.3d 193 (3d Cir. 2000) (policy that provided all Medicare-eligible retirees with allegedly inferior insurance option as compared with non-Medicare-eligible retirees could trigger ADEA liability).

No. 16-3665                                                    13

The question is fact-sensitive. In *Kentucky Retirement Systems
v. EEOC*, 554 U.S. 135 (2008), the EEOC challenged a state re-
tirement scheme for employees in hazardous occupations.
Under the scheme, an employee could ordinarily retire after
twenty years of service or after just five years of service if the
employee was at least 55. If, however, the employee became
disabled under qualifying circumstances, the employee could
retire immediately. In that situation, the employee's retire-
ment benefits would be calculated in part on the basis of "im-
puted" years, that is, the number of years it otherwise would
have taken for the employee to become eligible for retirement
benefits. Given the two routes to ordinary retirement eligibil-
ity (the twenty-year route for most workers and the five-year
route for older workers), a younger worker disabled on the
job would often receive more imputed years than would an
older worker. *Id.* at 139–40.

The Supreme Court held that this scheme did "not, on its
face, create treatment differences that [we]re 'actually moti-
vated' by age." *Id.* at 147. The Court relied on a series of fac-
tors, several of which are instructive here. For instance, the
Court noted that "as a matter of pure logic, age and pension
status remain 'analytically distinct' concepts." *Id.* at 143 (cita-
tion omitted). Likewise, age and insurance eligibility are ana-
lytically distinct. In both *Kentucky Retirement Systems* and this
case, there was no evidence of stereotypical assumptions, the
likes of which Congress sought to suppress through the
ADEA. *Id.* at 146. Rather, in both cases the defendant asserted
a "clear non-age-related rationale" for its policy: in *Kentucky
Retirement Systems*, an effort to ensure that disabled workers
had access to retirement benefits, *id.* at 144–45, and in this
case, an effort to preserve affordable health insurance for re-
tirees.

We recognize that one of the *Kentucky Retirement Systems* factors seems to tilt (slightly) in plaintiffs' favor. The Court in that case was skeptical about the chances of "finding a remedy that [could] both correct the disparity and achieve the … legitimate objective." *Id.* at 147. The problem was thorny; the state devised a scheme that was reasonable under the circumstances. In this case, the County believed it faced a dilemma in the fall of 2013: it could either (1) terminate the rehired retirees enrolled in the Aetna insurance or (2) risk forfeiting the insurance (or paying a much higher premium) for all retirees covered by the supplemental policy. However, the County might have had a third option. It might have explained its predicament to the small group of affected part-timers and then offered each a choice between continued insurance or continued employment. That alternative approach might have been more respectful of plaintiffs' individual preferences.

The fact that the County might have opted for a more sensitive solution to its problem does not change the bottom-line result in this ADEA case, though. The County could not fire its employees because of their age, but we see no evidence of such disparate treatment in the record. As a thought experiment, consider a scenario in which the "65 or older" criterion was eliminated and there was no evidence that any County official took account of the ages of plaintiffs. The outcome in this scenario would be unchanged. Exactly the same group of rehired retirees would be terminated. The plaintiffs were fired not because of their age but because they were impermissibly enrolled in a retiree-only Medicare supplement while also working part-time. Other employees of a similar age who were not enrolled in the Aetna supplement kept their jobs.

No. 16-3665                                                    15

We agree with the district court that "being age sixty-five or older was a necessary but insufficient factor to become a member of the affected group." *Carson*, 2016 WL 4798965, at *11. The County did not violate the ADEA.

> b. *McDonnell Douglas Burden-Shifting*

Though plaintiffs rely primarily on what they characterize as direct evidence of a facially discriminatory policy, they propose in the alternative to prove their disparate treatment claim through the *McDonnell Douglas* burden-shifting framework. Under *McDonnell Douglas*, where a plaintiff establishes a prima facie case for discrimination, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the challenged employment action. If the employer does so, the burden shifts back to the plaintiff to prove pretext. *Simpson*, 827 F.3d at 661.

We need not concern ourselves in this case with burden-shifting or pretext because plaintiffs have not established a prima facie case. Plaintiffs must show they were treated less favorably than similarly situated employees outside their protected class, that is, younger employees. Plaintiffs have not done so. Plaintiffs were among the small group of rehired retirees who were employed part-time and insured under Medicare and the Aetna supplement. *All* such employees were fired. *All* employees (regardless of age) who remain employed by the County are not enrolled in the Aetna supplement. *All* retirees who benefit from the supplement are no longer employed by the County. Without an appropriate comparator group, plaintiffs cannot make out a prima facie case for discrimination and cannot prevail under the *McDonnell Douglas* framework.

### 3.  *Disparate Impact*

Next, plaintiffs suggest that they may prove age discrimination under a theory of disparate impact. While the ADEA authorizes recovery in disparate impact cases, *Smith*, 544 U.S. at 232, disparate impact is a poor fit for plaintiffs' age-discrimination claim.

The crux of plaintiffs' claim is that they were the victims of an impermissibly *discriminatory* policy. (They were not, as we have explained above.) But to state a claim for disparate impact, plaintiffs would have to show that a "specific, facially *neutral* employment practice caused a significantly disproportionate adverse impact based on age." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 68 (3d Cir. 2017) (emphasis added). Plaintiffs would have to "proffer statistical evidence that the policy caused a significant age-based disparity," *id.* at 69, which they have not done. On the contrary, plaintiffs devote just two paragraphs of their appellate briefs to their conclusory disparate impact theory.

Even if plaintiffs could put together a prima facie case for disparate impact, the County would easily survive summary judgment under the "reasonable factors other than age" defense. See 29 U.S.C. § 623(f) ("It shall not be unlawful for an employer … (1) to take any action otherwise prohibited … where the differentiation is based on reasonable factors other than age[.]"). Here, the undisputed facts show that the County took an adverse action against a subset of older workers not because of their age but because it wished to preserve its supplemental insurance plan and to comply with federal law. Those reasonable factors amply support the County's decision.

No. 16-3665                                                    17

B. *Equal Protection*

Plaintiffs also argue that their terminations violated the Equal Protection Clause of the Fourteenth Amendment, and they seek relief under 42 U.S.C. § 1983. Plaintiffs' equal protection argument fails for essentially the same reason that their *McDonnell Douglas* burden-shifting argument fails: they have not identified a suitable comparator group. See *Whitaker ex rel. Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034, 1050 (7th Cir. 2017) ("The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'") (citation omitted); *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017) ("To prove discriminatory effect, [plaintiff] must show that he was a member of a protected class and that he was treated differently from a similarly situated member of an unprotected class.").

Even if plaintiffs could surmount that hurdle, the Equal Protection Clause subjects age-based distinctions to rational-basis review, the most deferential form of judicial scrutiny. See *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440–41 (1985) ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn … is rationally related to a legitimate state interest. … We have declined … to extend heightened review to differential treatment based on age[.]"); *Levin v. Madigan*, 692 F.3d 607, 619 (7th Cir. 2012) (same). The County chose to terminate a group of at-will part-time employees whose continued employment would have imperiled the County's already fragile financial situation or jeopardized an insurance plan that benefited plaintiffs and many other retirees. The County's choice preserved plaintiffs' eligibility for the supplemental insurance

18                                          No. 16-3665

under the Aetna plan. That choice was rational; the Constitu-
tion requires nothing more.

                                            AFFIRMED.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

July 26, 2017

**CERTIFIED COPY**

A True Copy

Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Before:      DIANE P. WOOD, Chief Judge
             JOEL M. FLAUM, Circuit Judge
             DAVID F. HAMILTON, Circuit Judge

|  |  |
|---|---|
| No. 16-3665 | AARON CARSON, et al.,<br>Plaintiffs - Appellants<br><br>and<br><br>RONALD PAULSIN,<br>Intervening Plaintiff - Appellant<br><br>v.<br><br>LAKE COUNTY, INDIANA,<br>Defendant - Appellee |
| **Originating Case Information:** | |
| District Court No: 2:14-cv-00117-PRC<br>Northern District of Indiana, Hammond Division<br>Magistrate Judge Paul R. Cherry | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)